PHILIP F. TIRRELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 16951. Promulgated January 17, 1929.

*H. H. Shelton, Esq.*, for the petitioner.
*R. W. Wilson, Esq.*, for the respondent.

1400

OPINION.

TRAMMELL: It is the contention of the petitioner that the sale of the stock in the Reynolds & Tirrell Co. to Reynolds and the subsequent reinvestment of the $200,000 received therefrom in the Tirrell Brothers Silk Co. amounted to an involuntary conversion of assets under section 214 (a) (12) of the Revenue Act of 1921, and that the capital gain of $193,400 realized from said sale to Reynolds is therefore nontaxable.

There is no controversy over the fact that the petitioner acquired this stock for $6,600 in October, 1913, and sold it in 1923 for $200,000, the only controversy being as to whether the transaction amounted to an involuntary conversion as above stated.

Section 214 (a) (12) of the Revenue Act of 1921, in so far as it is pertinent here, is as follows:

(a) That in computing net income there shall be allowed deductions:

    *        *        *        *        *        *        *

(12) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (a) its destruction in whole or in part, (b) theft or seizure, or (c) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross income under prior income, war-profits, and excess-profits tax acts.

The above-quoted section of the statute provides for three specific instances under which its benefits may be claimed by and allowed to a taxpayer when property is involuntarily converted and the proceeds invested in other property of a similar character or related in use to the property converted. The first provision is the destruction in whole or in part of the property and the second is theft or seizure. The third is the taking of the property by the exercise of the power of requisition or condemnation or the threat or imminence thereof. It is this latter provision which the petitioner here contends is applicable.

No element of condemnation or the power of requisition or the threat or imminence thereof is present in this case. The petitioner contends that the threats of the creditors and the necessity of either buying or selling his stock resulted in his acceptance of Reynolds' offer to buy. In our opinion, from the evidence, the sale of the petitioner's stock was not an involuntary conversion within the meaning of the statute.

In *Davis Co.*, 6 B. T. A. 281, one of the questions presented was whether or not the sale of property at the request and insistence of the local Chamber of Commerce was an involuntary conversion. The property was desired for location of a large business which would be very beneficial to the community. The petitioner in that case feared that refusal to comply with the request of the Chamber of Commerce would result in the loss of good will and trade and, therefore, sold the property. The proceeds were invested in other property on which a new plant was erected by the company. In discussing the case we said:

No doubt the appeal made by the local body was a most earnest and urgent one. Sufficient pressure was brought to bear to lead petitioner to the conclusion that it must comply or suffer the diminution of the good will it had built up in the community. The petitioner knew that it could not be coerced by legal means into making the sale, as the power of requisition or condemnation did not exist. However, the exercise of such power, or the imminence thereof, is essential to an involuntary conversion, due to the cause under discussion. The sale was made because it was deemed to be good business policy.

See also *Piedmont-Mt. Airy Guano Co.*, 8 B. T. A. 72. The expression " power of requisition or condemnation or the threat or imminence thereof " has no relation to the facts presented in this case.

We accordingly approve the determination of the respondent.

*Judgment will be entered for the respondent.*