VIM SECURITIES CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 99693. Promulgated February 28, 1941.

*James V. Giblin, C. P. A., William Cogger, Esq.,* and *Julius W. Baer, C. P. A.,* for the petitioner.
*Leonard A. Spalding, Jr., Esq.,* for the respondent.

### OPINION.

DISNEY: This proceeding involves the income and excess profits tax liability of the petitioner, the Vim Securities Corporation, for the calendar year 1936. The petitioner requests the redetermination of proposed deficiencies asserted by the Commissioner of $9,405.42 in income tax and $3,820.10 in excess profits tax. The proposed deficiencies are due to the Commissioner's determination that the profit realized by the petitioner upon the condemnation by the city of New York of certain property, alleged to have been theretofore owned by petitioner, is not exempt from taxation under the provisions of section 112 (f) of the Revenue Act of 1936.

The errors assigned are as follows: "(a) Inclusion in the year 1936 [the year in controversy] of an alleged profit of $36,350.00 [the amount is not in dispute] as a taxable gain from condemnation of realty and the fixtures of its tenant, Vim Electric Co., Inc.; the Commissioner alleging that the proceeds of condemnation were not forthwith invested in similar realty. (b) The taxing of the alleged gain in 1936; if taxable at all it appears to be gain in 1935."

By motion to amend to conform to proof and in brief and argument petitioner makes issues of the following:

(1) That the tax was barred by the statute of limitations.

(2) That the amount of the gain relied upon by the Commissioner in computation of the tax was subject to diminution by the value of the personalty owned by one other than the petitioner.

(3) That the petitioner was not "doing business" within the purview of the Revenue Act, and was not amenable to the capital stock tax. Hence not subject to an excess profits tax.

The motion to amend to conform to proof is granted. The matters raised by the motion are in a sense largely preliminary, and will therefore be first considered.

(1) With respect to the first question, as to bar of the three-year statute of limitations, the record shows and we find as facts: That the Commissioner's deficiency notice is dated May 11, 1939, and is for taxes for the year ended December 31, 1936, in the aggregate amount of $13,225.52; that the petitioner keeps its books and makes its tax returns on the accrual basis; that title to the property involved herein was taken by the city of New York June 28, 1935; that the matter proceeded in court during 1935 and the early part of 1936, the tentative decree as to awards being signed April 21, 1936, and filed April 22, 1936, and objections being heard on May 20, 1936; that the final decree, awarding damages or compensation to petitioner for the property taken, was rendered July 14, 1936, and that the petitioner, on October 9, 1936, received the amount of the award from the city of New York, which resulted in the alleged gain to petitioner of $36,350.

The petition merely alleges that "if the gain is taxable, it is for property taken in 1935, not in 1936, hence taxable in 1935", and "now outlawed." Whether there is any proper plea of the statute of limitations in the petition is questionable. However, be that as it may, on the facts found and above stated, there is no merit in the petitioner's contention on this issue, since the Board and the courts, in circumstances substantially identical to those involved in the instant case, have held that the profit or gain is taxable as income, to one on the accrual basis, in the year when the condemnation proceedings are completed, the award made, and compensation is received, and not in the year when title to the property is taken prior to completion of the condemnation proceedings and payment. *McGuirl, Inc.* v. *Commissioner*, 74 Fed. (2d) 729; certiorari denied, 295 U. S. 748, involving a condemnation in New York, as herein. We hold that the taxes proposed are not barred by the statute of limitations.

(2) The position of the petitioner upon the second question presented in the motion and urged in brief for petitioner, that the gain, $36,350, relied upon by the Commissioner in computing the tax was subject to diminution by the value of the personalty owned by one other than the petitioner, i. e., the Vim Electric Co., is not borne out by the record. The facts proven, in our opinion, fail to show that any one other than the petitioner owned any personalty or fixtures embraced in the property taken as petitioner's by the city of New York and compensated for in the final decree of condemnation involved in these proceedings. The petition alleges: "The gain, if taxable, from the old realty, was $36,350.00." This is admitted in the answer. There is no evidence in the record that the sum of $9,454

awarded to the petitioner in the decree of the court was for fixtures of petitioner's tenant, the Vim Electric Co. There is, in fact, no evidence in the record indicating that the city of New York took or condemned any property of the Vim Electric Co., nor that the petitioner accounted to Vim Electric Co. for $9,454 received on the condemnation proceedings.

(3) The third question or issue raised by the motion and in brief for petitioner is that the petitioner was not doing business within the purview of the internal revenue law, so as to make it subject to the excess profits taxes proposed by the Commissioner. The record on this matter is confused and inconsistent. The petitioner in its petition asserts that its "business in 1935 and 1936 was the ownership of realty and the leasing thereof to the Vim Electric Co., Inc." The petition, however, contains no assignment of error with reference to excess profits taxes. The respondent in his answer admits that the petitioner's business in 1936 was the ownership of realty, but denies the remaining allegation. No reply was filed. Thus we find the petitioner asserting, in a sense, that it was in business, yet now denying it. Yet if we considered the use of the expression "business" as general and that the allegation in effect was that the petitioner was not doing business, but only owning leased realty, we see that the respondent in effect admits that the business was owning realty. Mere ownership and leasing, without operation, of a parcel of real estate is not such transaction of business as to subject the owner to excess profits tax. *Kingkade Hotel Co.* v. *Jones*, 30 Fed. Supp. 508; *Rotorite Corporation*, 40 B. T. A. 1304 (reversed on other grounds, 117 Fed. (2d) 245, and cases cited; *Sears* v. *Hassett*, 111 Fed. (2d) 965. In stating his case, petitioner's counsel stated that this point "is not in the petition." There clearly being no issue made on the question, objection was sustained to a question as to whether the petitioner did anything else for the next year after losing its building. Some evidence, however, in the record does bear upon the point and we think demonstrates that the petitioner was in business. We find that the petitioner's income tax and excess profits tax return states the "Kind of business (in detail)" was "Owners and Operators—Real Estate" and that precisely the same answer is given in the capital stock tax return to the question, "Nature of business in detail"; that on the income tax and excess profits tax return the "Nature of Business" is checked as "Real estate, realty holding, real estate agents"; and that the income tax return lists under "Other Deductions Authorized by Law" items of Attorney's Fees $2,050.39, Professional Fees $25.00." These claims are consistent only with a contention of trade or business carried on. These returns were offered and admitted for the purpose of showing accrual basis, that stockholders were individuals, and "to correct errors", so that it can not be said that the admission thereof

does not cover the above stated facts. Moreover, the petitioner relies upon them as evidence that there was no business done. We think the petitioner's proof is clearly to the contrary, that the petitioner has shown itself to be in business as an operator of real estate and a real estate agent and not a mere owner, and that petitioner's contention that no excess profits tax is applicable should be denied.

We come now to the principal issue whether the profit or gain, $36,-350, realized by the petitioner corporation upon condemnation by the city of New York of certain real estate and fixtures, is exempt from taxation under the provisions of section 112 (f) of the Revenue Act of 1936. The statute and regulations involved are as follows:

SEC. 112.   RECOGNITION OF GAIN OR LOSS.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(f) INVOLUNTARY CONVERSIONS.—If property (as a result of its destruction in whole or in part, theft or seizure, or an exercise of the power requisition or condemnation, or the threat or imminence thereof) is compulsorily or involuntarily converted into property similar or related in service or use to the property so converted, or into money which is forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, expended in the acquisition of other property similar or related in service or use to the property so converted, or in the establishment of a replacement fund, no gain or loss shall be recognized. If any part of the money is not so expended, the gain, if any, shall be recognized, but in an amount not in excess of the money which is not so expended.

ART. 112 (f)-1 [Regulations 94]. *Reinvestment of proceeds of involuntary conversion.*—In order to avail himself of the benefits of section 112 (f) it is not sufficient for the taxpayer to show that subsequent to the receipt of money from a condemnation award he purchased other property similar or related in use. The taxpayer must trace the proceeds of the award into the payments for the property so purchased. It is not necessary that the proceeds be earmarked, but the taxpayer must be able to prove that the same were actually reinvested in such other property similar or related in use to the property converted. The benefits of section 112 (f) can not be extended to a taxpayer who does not purchase other property similar or related in service or use, notwithstanding the fact that there was no other such property available for purchase.

If, in a condemnation proceeding, the Government retains out of the award sufficient funds to satisfy liens and mortgages against the property and itself pays the same, the amount so retained should be included in determining the amount of the net award. An amount expended for replacement of an asset, in excess of the recovery for loss, represents a capital expenditure and is not a deductible loss for income tax purposes.

In connection with this issue, we find the following facts: The petitioner is a corporation, duly chartered under the laws of the State of New York, with its principal office at 325–327 Gold Street, Brooklyn, New York, and kept its accounts and made its returns on the accrual basis. Prior to June 28, 1935, the petitioner was the owner of a parcel of real estate located at 16 Concord Street, Brooklyn, New York. On June 28, 1935, the Supreme Court of the State of New York entered an order granting the application of the city of New York to condemn

certain real estate located in the county of Kings, which condemned real estate included the property at 16 Concord Street. The city of New York took title to the 16 Concord Street property as of June 28, 1935. Prior to and at the time of the taking of the 16 Concord Street property, it was occupied by the Vim Electric Co., as a tenant of the petitioner. Subsequent to the condemnation on June 28, 1935, of the 16 Concord Street property, the Vim Electric Co., under temporary arrangement with the city of New York, continued to occupy the premises and paid rent therefor until the latter part of December 1935, when it moved to 325–327 Gold Street, Brooklyn, New York, and it has since occupied the same as a tenant, paying rent to the 325–327 Gold Street Corporation, Inc., hereinafter called Gold Street Corporation.

The building, fixtures, and land involved herein were about September or October 1935 appraised by appraisers representing the city of New York. The building and land were appraised separately from the fixtures. The final decree of July 14, 1936, awarded to the petitioner for land, improvements, and fixtures, $85,000, and $5,312.50 interest, subject to a $12,000 mortgage on the property. On October 9, 1936, the amount of the award, with interest, when paid was $91,604.09 and the petitioner as a result of the award received $79,604.09 from the city of New York. The $12,000 mortgage was satisfied out of the award.

After the taking of title to the 16 Concord Street property by the city of New York a contract was executed on August 19, 1935, between Julius Kassover and the Dime Savings Bank of Brooklyn, under which Kassover agreed to buy, and the bank agreed to sell, land and buildings located at 325–327 Gold Street, Brooklyn, New York, hereinafter designated Gold Street property, for a consideration of $110,000; $10,000 to be paid on the signing of the contract and $100,000 in cash on delivery of the deed, which the contract provided should be delivered at the office of the Dime Savings Bank of Brooklyn on or before October 1, 1935, upon receipt of said payments. On October 4, 1935, the contract was assigned to the Gold Street Corporation. Thereafter, on the same day, October 4, 1935, the Dime Savings Bank of Brooklyn deeded the premises located at 325–327 Gold Street to the Gold Street Corporation, which deed was duly recorded on October 7, 1935, at the Register's Office, Kings County, New York.

The Gold Street Corporation is a corporation organized on October 1, 1935, and existing under the laws of the State of New York, with an authorized capital stock of $10,000, divided into 100 shares of the par value of $100 each. It was organized for the purpose of acquiring ownership of the above-mentioned Gold Street property. Its minute book, under date of September 19, 1935, indicates that the Dime Savings Bank of Brooklyn had offered to sell the Gold Street property to the Gold Street Corporation upon terms proposed by it. The Gold Street Corporation filed separate Federal income tax re-

turns, kept separate books of account, and had its own separate bank account. The original incorporators of the Gold Street Corporation were Morris Borden, Anna Vinarsky, and Hyman Kaplan, each subscribing for one share of stock. All three immediately after the incorporation signed waivers and assigned their subscription rights respectively to Samuel Kassover, Julius Kassover, and Max Kassover, brothers, who on the minutes of the corporation appear as the only stockholders thereof. The stock certificate book of the corporation contains all certificates, still in blank, and indicates that no certificates of stock were ever issued from it. The record fails to show that any certificates of stock of the corporation were ever issued to anyone. The tax returns of the Gold Street Corporation for the calendar years 1935 and 1936 refer to Samuel, Max, Nathan, and Julius Kassover, as each owning 12½ shares of the stock of the corporation.

The stock of the Vim Securities Corporation and of the Vim Electric Co. was owned in equal proportions by four brothers, Samuel, Julius, Max, and Nathan Kassover. Samuel Kassover was the president of the Vim Securities Corporation, the Vim Electric Co., and the Gold Street Corporation.

The payments for the Gold Street property were made in the following manner: The sum of $2,000 was paid to the Dime Savings Bank of Brooklyn, by check of the Vim Securities Corporation, S. Kassover, president-treasurer, drawn on the Chase National Bank of the City of New York, bearing date of August 13, 1935. The check was endorsed and deposited by the Dime Savings Bank of Brooklyn and constituted a part of the down payment on the $10,000 required under the contract of purchase. The check of the Vim Electric Co., S. Kassover, president-treasurer, dated August 19, 1935, to the order of the Dime Savings Bank of Brooklyn in the sum of $8,000 and endorsed and deposited by it, constituted the remainder of the $10,000 deposit required.

Under date of October 4, 1935, the Vim Electric Co. drew its check on the National City Bank of New York for $100,000, payable to the order of the Dime Savings Bank of Brooklyn, to pay the remainder of the total which was due on the Gold Street property. The check, though certified, was not accepted nor used by the Dime Savings Bank of Brooklyn, because the bank did not wish to transfer title to the property to another corporation when the amount was being paid by the Vim Electric Co. The check was redeposited to the credit of the Vim Electric Co. Thereupon, on October 5, 1935, three checks of the Vim Electric Co., by S. Kassover, president, were drawn on the National City Bank of New York, one payable to the order of Julius Kassover, another payable to the order of Max Kassover, and a third payable to the order of Samuel Kassover, the first two being for $25,000 each and the third being for $50,000. The check for $50,-

000 was drawn for that amount because one of the four Kassover brothers was out of town. All three of the checks were endorsed to J. Kassover in order that he might have sufficient money to pay the Dime Savings Bank of Brooklyn the $100,000, balance due on the purchase from it of the Gold Street property. On October 5, 1935, J. Kassover drew his individual check, which was certified, on the National City Bank of New York, for $100,000, payable to the order of the Dime Savings Bank of Brooklyn, which was accepted in full payment of the balance due on the Gold Street property.

On November 27, 1935, the Vim Securities Corporation, S. Kassover, president-treasurer, drew its check, payable to the order of the Vim Electric Co., on the Chase National Bank of New York for $8,000, being a refund to the Vim Electric Co. for the $8,000 which it had given the Dime Savings Bank of Brooklyn in its check of August 19, 1935, for the same amount.

The Vim Electric Co. account appearing on the books of the petitioner was charged with $8,000 as of December 31, with the notation: "Deposit 325 G. St." The remaining $2,000 was on May 31, 1936, charged to the same account with the notation: "325 Gold St." The journal of the petitioner contains an entry debiting the Vim Electric Co. with $2,000, with the notation: "To transfer and take up by V. E. Co. Inc. amount paid by V. S. Corp. for a/c 325 G. St. Corp." The full amount of the cost of $110,000 was set up on the books of the Vim Electric Co. as an account receivable from the Gold Street Corporation. An account payable was set up under date of "10/4/35" on the books of the Gold Street Corporation to the Vim Electric Co. in the amount of $110,000, with the notation: "Bldg cost." The corresponding entry in the journal reads:

Vim Electric Co. Inc. 27_____ $110,000
To record the purchase of 325 Gold St. Brooklyn from Dime Savings
Bank 8/19/35 per their closing statement & the advance to 325 Gold
St Corp by V. E. Co. of the purchase price

The Gold Street property which was purchased for $110,000 was considered more valuable than the 16 Concord Street property which was being condemned, and it was thought if that fact was publicly known it might lessen materially what otherwise might be obtained for the 16 Concord Street property by condemnation proceedings, for which a larger amount, $135,000, was being claimed.

After the payment of the $85,000 to the petitioner as the result of the condemnation award, the petitioner issued its checks to the Vim Electric Co. as follows:

| | | | |
|---|---|---|---|
| Jan. 29, 1937 | $20,000 | May 20, 1937 | $5,000 |
| Jan. 30, 1937 | 10,000 | June 4, 1937 | 10,000 |
| Mar. 12, 1937 | 20,000 | June 19, 1937 | 10,000 |
| Apr. 29, 1937 | 5,000 | | |
| May 6, 1937 | 5,000 | Total | 85,000 |

The foregoing amounts are claimed in behalf of petitioner, as payments of loans made to it when the Gold Street property was purchased. During the above period there were with negligible exception no other financial transactions between the two companies.

On a combination general ledger and general journal prepared and kept for the Gold Street Corporation by a bookkeeper under instructions of the corporation's officers and its accountant, there appears an entry on page 2, which indicates that $110,000 was due the Vim Electric Co. There is on page 3 another item called: "Interest, Vim Electric Co., Inc.", being a debit and credit of $5,500, representing the interest that is accrued up to the time the money had been paid back to the Vim Electric Co. There appear on page 6 items under "Profit and Loss—Real Estate Taxes, Insurance, Interest on Mtges., Taxes, Depreciation", all representing expenses of the Gold Street Corporation. Another item entered covers interest paid to the Vim Electric Co. in the amount of $3,208, being interest on $110,000 at 5 percent from June 1 to December 31, 1937. This is an accrued item of expense. The tax returns of the Gold Street Corporation were made up from the book in which the foregoing entries appear.

In a book in which the accounts of the Vim Securities Corporation and the Gold Street Corporation are entered, among other items are the following: Interest, debit $2,291.67 to Vim Electric Co., Inc., credit $2,291.67; interest on $110,000 at 5 percent per annum, January 1, 1937, to May 31, 1937. On page 1 of the same book, the following entries appear:

A corporation organized under the laws of the State of N. Y. under the name of 325–327 Gold St. Corp. with an authorized capital stock of 100 shares of the par value of $100 each, for the purpose of owning and operating property. The subscriber to the capital stock was the Vim Securities Corp. In view of pending condemnation proceedings before the court, regarding the property leased to the Vim Electric Co., Inc. known as 16 Concord St. The stock subscription was transferred to the stockholders of the Vim Sec. Co. to be issued in the same proportion, namely ¼ each.

\*     \*     \*     \*     \*     \*     \*

Capital Stock Subscribers_____ $5000
    To Capital Stock Subscription_____ $5000
To record subscription to 50 shs at $100 each per share

\*     \*     \*     \*     \*     \*     \*

Capital Stock Subscription_____ 5000
    Capital Stock Issued_____ 5000
For issuance of capital stock in accordance with original Subscription Transferred to sundry individuals

A page, a ledger sheet, from the books of the Vim Electric Co. represents an account called Gold Street Corporation, representing various charges and credits incurred by and for the corporation. The entry thereon shows a balance of $112,149.18 due by the Gold Street Corporation to the Vim Electric Co. as of June 1, 1936. It represents a balance of the account.

On page 2, opening entry, in the ledger or account book of the Gold Street Corporation it is stated that $110,000 was owed by the Gold Street Corporation to the Vim Electric Co. for land and building. At the time the entry was made the bookkeeper who made it did not know that $10,000 already had been paid on the indebtedness for the Gold Street land and building. Under date of May 31, 1937, on page 5 of the same book an entry appears as follows:

Vim Electric Co. Condemnation Award  29_____ 85,000
   a/c Vim Securities Corp.       25_____        85,000
      To Vim Securities Corp. for proceeds of Condemnation
      Award

The facts above found and set forth present such inconsistencies as to be difficult of interpretation. The petitioner contends in effect that it is entitled to the benefit of section 112 (f) of the Revenue Act of 1936 because its stockholders were the same as those of the Gold Street Corporation which acquired and still owns the new property; because there was in effect only one corporation, though three legal entities, in addition to the stockholders, appear; and because the condemnation money received by the petitioner paid, in part, for the new property. The respondent on the contrary takes the position in substance that legal entities must be recognized, that the petitioner did not acquire any new property, that the stockholders in the new corporation which acquired the new property did not include all of those having stock in the petitioner, and that in fact the petitioner's condemnation money did not go to the new corporation to pay for property, but that the new corporation borrowed from the Vim Electric Co., and that various book records made by the different companies recognize the separate entities and bear out respondent's view. The petitioner, upon brief and referring to the respondent's request for a finding that funds advanced by the Vim Electric Co. to the Gold Street Corporation, the holder of the new property, were set up on the books of the latter as owed to the Vim Electric Co. and that interest was paid or accrued on the same to the latter, says: "This is correct insofar as it evidences a physical notation, but is misleading." Elsewhere upon brief the petitioner says:

Without an examination of the attending facts and the relationship of the Kassover Brothers in the petitioner corporation and the Vim Electric Co., Inc. and in the formation of the new corporation, which acquired the substituted warehouse, it may appear from a cursory observation that the method adopted was circuitous and involved. But in the light of the examination of the true facts, the procedure becomes simple and clear and the only approved manner of obtaining the end result under the exigencies then confronting the parties. * * *

We have examined the facts with care, but the procedure has not to us "become simple and clear." On the contrary, it appears as "circuitous and involved" as petitioner admits it may appear from a cur-

sory observation. The petitioner is in the plain position of asking us to disregard entries made in the course of business by three corporations, indicating a treatment of this matter inconsistent with the present position of the petitioner. Those entries indicate to us that the ownership of the property newly acquired, by a new corporation, was well recognized by the stockholders and officers at that time. It is true that the petitioner paid the condemnation money to the Vim Electric Co., but this was in partial payments, not beginning until January 29, 1937, and continuing until June 19, 1937. No reason is shown why, if the petitioner was investing the money in the Gold Street property, it was not paid immediately upon receipt on October 9, 1936. Nor is any reason shown why, if petitioner in fact purchased and owned the new property, it was not conveyed to the petitioner upon completion of the condemnation proceedings and payment of the award. The reason why this had not been done earlier was, as petitioner admits, in order that the amount of the award might not be affected and cut down by disclosure of the fact that the petitioner was acquiring, for less money than the amount asked for the old property, another more valuable property. But this is an admission that the purchase of the property by a different corporation was definitely intended. In other words, for the purpose of affecting the award a different corporate entity was intentionally, and in due legal form, employed, but we are asked to disregard the different entity so set up. Further inconsistency appears between the contention above discussed, that the petitioner was not doing business and so was not amenable to excess profits tax, and the fact that the Vim Electric Co., one of the entities sought to be merged in the petitioner, is shown to have been very actively in business and the contention, above considered, that the fixtures were those of Vim Electric Co. and the value thereof was not awarded to the petitioner. Thus we see petitioner relying on separateness of entities. That various book entries show the Gold Street Corporation acting as a separate entity and treating the Vim Electric Co. as lending to it, instead of its merely receiving the condemnation money gratuitously from the petitioner, though sought to be explained, can not be effectively denied.

The petitioner urges that it perforce must acquire a new building. This of course is not consistent with the contention of no business done by petitioner. The most active business entity was the Vim Electric Co. It was that company which needed a building. That company advanced money to the Gold Street Corporation, which acquired the property; and upon the books of the Gold Street Corporation, by items of interest accrued and other items, the Vim Electric Co. appears as the lender. Some items of those amounts paid by petitioner to the Vim Electric Co. appear charged to it, and not to be a mere transfer of funds. The Gold Street Corporation had a bank account and made

separate tax returns, though it appears to have made no record of any corporate meetings. Though attempt is made to explain away the effect of corporate and book records, we think we are more safely guided by the records. Thus it is contended that four stockholders in the new corporation were the same as those in petitioner. Yet three "dummy" stockholders in the new corporation are shown as assigning their rights to only three of the persons who were stockholders in petitioner, and though recitation is made as to four stockholders in the new corporation, no stock in fact was ever issued. Again, though there is recitation that the subscriber to the stock in the new corporation was the Vim Securities Corporation, immediately thereafter it is also recited that the stock subscription was transferred to the stockholders of petitioner. No certificates were ever issued. All this confusion is plainly insufficient to show that the new corporation, or its property, was owned by the old, or even by the same stockholders. Though there is evidence that the petitioner was advised not to issue the stock to the individuals, such fact is insufficient to explain what was actually done in setting up the new corporation, and the transactions had and recorded. The petitioner has the burden of proof.

. . We think the petitioner can not with reason be held to have acquired the new property. Appeal is made to look through form to substance, and we are cited among others such cases as *North Jersey Title Insurance Co.* v. *Commissioner*, 84 Fed. (2d) 898, and *Southern Pacific Co.* v. *Lowe*, 247 U. S. 330. We think that such cases should not be applied here, where the new corporation was set up for a definite purpose and that purpose was effected, and where the effect of ordinary corporate records and accounts, set up to serve the purpose of the individuals involved, must be disregarded. *Higgins* v. *Smith*, 308 U. S. 473; *Valuation Service Co.*, 41 B. T. A. 811. In *Regals Realty Co.*, 43 B. T. A. 194, we considered section 112 (b) (1) of the Revenue Act of 1936, as to nonrecognition of gain or loss where property held for investment is exchanged for other property. We refused, following *Higgins* v. *Smith, supra*, to disregard the separate corporate entities of the petitioner and its successor "at the behest of their creators." Petitioner cites *Excelsior-Leader Laundry Co.*, 8 B. T. A. 183, involving proceeds of insurance upon destroyed property invested in new property, where section 234 (a) (14) of the Revenue Act of 1921 was relied upon. We distinguish that case from the instant proceeding for the reason that, though the first corporation seems to have loaned the insurance proceeds to another, the first corporation, claiming the credit, was consolidated with the other prior to the end of the year. The fact was there stressed by us in upholding the petitioner's contention. To allow such a consolidated corporation the benefit of a statute by no means indicates that the same conclusion should be reached under

the circumstances here involved. Considering all of the facts found, and reconciling them as nearly as possible, we conclude and hold that the respondent did not err in adding to petitioner's net income the $36,-350 gain from condemnation of real estate.

Moreover, we think it apparent that the expenditure of moneys for new property long prior to the payment of the condemnation award, as here, does not satisfy the statutes. *Bandes* v. *Commissioner*, 69 Fed. (2d) 812. *Munson Steamship Line* v. *Commissioner*, 77 Fed. (2d) 849, we consider clearly distinguishable on its facts.

Lastly, petitioner suggests that it is entitled to credit under section 26 (c) (1) of the Revenue Act of 1936. The question is raised on brief, with no pleading thereof. It is not even covered by the motion to amend to conform to proof hereinabove considered. No evidence indicates facts to which the statute could be applied. The point appears to be an afterthought. No error in this respect is shown.

Reviewed by the Board.

*Decision will be entered for the respondent.*

Van Fossan and Leech concur only in the result.