DOROTHY C. THORPE GLASS MFG. CORP., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 144–67.   Filed November 26, 1968.

*Arthur D. Sweet*, for the petitioner.
*Stephen W. Simpson*, for the respondent.

OPINION

RAUM, *Judge:* Petitioner's primary argument is that the gain realized on the sale of the property located at 902 Thompson Avenue was nonrecognizable since it arose out of an involuntary conversion of its property within the terms of section 1033(a) of the 1954 Code.[1] Although there is no dispute that the proceeds of sale of petitioner's property at 902 Thompson Avenue were invested in "similar" property within the meaning of section 1033(a)(1), the Government challenges petitioner's position on two principal grounds, (1) that petitioner did not possess a property interest in any land or building subject to the threat of destruction, requisition, or condemnation within section 1033(a), and (2) that, in any event, there was no "involuntary conversion" of the nature required by the statute. We think that these grounds are sound.

Insofar as the actions by the City of Glendale are concerned, it is clear that even if there had been a destruction, requisition, or con-

---

[1] SEC. 1033. INVOLUNTARY CONVERSIONS.

(a) GENERAL RULE.—If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted—

(1) CONVERSION INTO SIMILAR PROPERTY.—Into property similar or related in service or use to the property so converted, no gain shall be recognized.

demnation of property or the threat thereof within the meaning of section 1033(a), it related solely to the property at 912 Thompson Avenue in which petitioner had no interest, and that there was therefore no involuntary conversion of *petitioner's* property at 902 Thompson Avenue. Only Fortner Engineering Co., as owner, and Thorpe, petitioner's affiliate, as lessee, had any interest in the threatened property. And while Thorpe's interest as lessee was sufficient to bring it within the coverage of section 1033 in respect of that leasehold interest, assuming that all other requirements were satisfied, cf. *Davis Regulator Co.*, 36 B.T.A. 437, the blunt fact remains that petitioner had no interest whatever in the property at 912 Thompson Avenue which alone was the target of the City's threats.

We are aware that in appropriate circumstances the threat of condemnation of one of two properties where both are owned and operated as an economic unit by the same taxpayer, may furnish the basis for applying the nonrecognition provisions of section 1033 in respect of the sale of both properties. Cf. *Harry G. Masser*, 30 T.C. 741. In such circumstances, the application of the statute to the owner's interest in the condemned property was merely extended to cover the same owner's interest in the second parcel. In the present case, however, petitioner had no interest in the threatened building at 912 Thompson Avenue, and therefore had no property covered by the statute with which its property at 902 Thompson Avenue could be associated.

Nor is petitioner's position in this respect strengthened by the fact that its affiliate, Thorpe, had a leasehold interest in 912 Thompson Avenue that might have furnished the basis for the application of section 1033. Cf. *Davis Regulator Co., supra*. In the first place, the record does not disclose any sale of that leasehold interest which might have brought section 1033 into play. And in the second place, Thorpe's leasehold interest may not be attributed to petitioner. Both were separate, viable corporate entities, one engaged in the business of decorating glassware, and the other in the business of owning and renting real estate. The persons who controlled these business operations elected to do so by using two separate corporate entities. That election cannot now be repudiated in order to receive more favorable tax treatment under section 1033. Cf. *Vim Securities Corp.* v. *Commissioner*, 130 F. 2d 106 (C.A. 2), affirming 43 B.T.A. 759, certiorari denied 317 U.S. 686; *Moline Properties* v. *Commissioner*, 319 U.S. 436, 438–439.

Moreover, even if we were to accept petitioner's argument that it had an interest in the property at 912 Thompson Avenue, the evidence does not establish that the City of Glendale caused the involuntary conversion of the petitioner's property within the terms of sec-

tion 1033. Section 1033(a) clearly limits the nonrecognition of gain to situations where property is involuntarily converted "as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof." Since destruction, theft, or seizure is not involved, the principal issue is whether there was a "requisition or condemnation" of the petitioner's property, or a threat thereof.

The only action threatened with respect to the defective mezzanine was a legal action which could have resulted in a misdemeanor conviction, carrying with it a possible jail sentence for a maximum period of 6 months and a $500 fine. The City did not threaten condemnation or taking of the building. Granted the threat of criminal conviction is coercive, it does not constitute a threat of "requisition or condemnation" of petitioner's property.

The inapplicability of the statute to this type of situation was made clear in *American Natural Gas Co.* v. *United States*, 279 F. 2d 220 (Ct. Cl.), certiorari denied 364 U.S. 900, where the court spelled out the limitations of the term "requisition or condemnation" (as used in the comparable provisions of sections 117(j) and 112(f) of the 1939 Code), as follows (p. 225):

> Plaintiffs say that the term "requisition or condemnation" as used in the Act means something more than the exercise of the power of eminent domain. We do not think it does. It seems clear to us that the words mean the taking or the threat of taking property by some public or quasi-public corporation—by some instrumentality that has the power to do so against the will of the owner, and for the use of the taker. That is the common, well-recognized meaning of those words and there is nothing to indicate that Congress used them in any other sense. Plaintiffs were required to dispose of their property, but the United States did not take it, nor did it prevent plaintiffs from getting for it its full market value at the time of the taking.

The same meaning was given to this phrase in *Dear Publication & Radio, Inc.* v. *Commissioner*, 31 T.C. 1168, affirmed 274 F. 2d 656 (C.A. 3). See Rev. Rul. 57–314, 1957–2 C.B. 523.

The petitioner also argues that there was a governmental "requisition" since the Small Business Administration loan was conditioned upon the sale of the property and the application of the proceeds against the loan. Admittedly, this contractual condition created pressures which ultimately resulted in the sale of the property. Nonetheless, there was no governmental taking or threat of taking of petitioner's property. Petitioner entered into its contractual relationship with the agency of its own volition. No governmental authority forced petitioner to secure its financing from the Small Business Administration. Any compulsion upon it to deal with the Small Business Administration was the result of business expedience, not the exercise of the governmental power of eminent domain. This type of compulsion

cannot form the basis of an involuntary conversion within the terms of section 1033. Cf. *C. G. Willis, Inc.*, 41 T.C. 468, affirmed 342 F. 2d 996 (C.A. 3); *Dear Publication & Radio, Inc.*, 31 T.C. 1168; *George S. Robins*, 15 B.T.A. 1068; *Philip F. Tirrell*, 14 B.T.A. 1399; *The Davis Company*, 6 B.T.A. 281.

Finally, the petitioner argues that it need not recognize gain on the sale because section 21 of the Small Business Act provides that all laws or parts of laws inconsistent with that Act "are hereby repealed to the extent of such inconsistency" 72 Stat. 384. Thus, goes the argument, if the capital gains are taxed in this type of situation small businessmen will not benefit fully from the assistance provided by the Small Business Act. This argument does not rely on the relief provisions of section 1033,[2] but is rather a general broadside against any taxation under the Code occasioned by contracts made with the Small Business Administration. There is, however, nothing in the legislative history of the Small Business Act, much less in its provisions, which evidences an intent to insulate small businesses from general taxation in transactions such as the one here. Indeed, if petitioner's argument were carried to its logical conclusion, any taxation, including income taxation—or for that matter any regulation of business under Federal statutes of general application such as those administered by the Federal Trade Commission or the Securities and Exchange Commission which might have an adverse financial effect upon a particular company aided by the SBA—would be improper as a result of the general repealer of section 21. The argument proves too much. Such was hardly the intent of Congress.

*Decision will be entered under Rule 50.*

---

[2] Indeed, if there should be any "repeal" of sec. 1033 as a result of sec. 21 of the Small Business Act, the nonrecognition or relief provisions of sec. 1033 would of necessity be eliminated, thereby defeating petitioner's claim to be free of tax under the provisions of sec. 1033. The argument would thus be self-destructive.