R. A. STEWART & CO., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2149–69.    Filed October 26, 1971.

*Sidney Meyers*, for the petitioner.
*Ronald A. Wagenheim*, for the respondent.

QUEALY, *Judge:* The respondent determined deficiencies in the Federal income tax due from the petitioner as follows:

| Year | Deficiency |
| --- | --- |
| 1965 | $6,212.94 |
| 1966 | 7,458.82 |

Concessions having been made, the only issue presented for decision is whether petitioner should recognize gain in 1965 on account of payments made to it by the City of New York for the appropriation of the petitioner's realty or whether the petitioner is entitled to nonrecognition treatment for such gain under section 1033.[1]

### FINDINGS OF FACT

R. A. Stewart & Co., Inc. (hereinafter sometimes referred to as the petitioner), is a corporation organized under the laws of the State of New York. Its legal residence and principal place of business on the date of the filing of the petition herein was in New York, N.Y. At present, the petitioner is still located in New York, N.Y.

At all times material hereto, petitioner kept its books of account and filed its income tax return on the accrual basis and its taxable year was the calendar year. The petitioner filed its corporation income tax returns for the years 1965 and 1966 with the district director of internal revenue for the Manhattan District, New York.

The petitioner has been in the "marking and stamping device" business for a number of years and conducted its business operations from

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

the property it owned prior to and during the years in issue. This property was located at 80 Duane Street, New York, N.Y.

On April 19, 1965, the City of New York (hereinafter sometimes referred to as the City) made application for an order authorizing the condemnation of real property, part of which covered the property owned by the petitioner located at 80 Duane Street, New York, N.Y., designated as Damaged Parcels 7 and 8. This application was granted and on April 22, 1965, an Order to Condemn was entered. This order also stated that title to the petitioner's property vested in the City as of April 22, 1965, and it did so vest as of that date. The procedure followed and the vesting of title in the City upon entry of the order of condemnation are provided for in section B15–36.0 of the New York City Administrative Code which states:

Vesting of title; date of; seizin; possession.—a. The title to any piece or parcel of the real property authorized to be acquired hereunder for any public improvement or for any public purpose shall be vested in the city upon the entry of the order granting the application to condemn, in a capital project proceeding. The mayor, however, may direct that the title shall be vested in the city upon a specified date after the date of the entry of the order granting the application to condemn, or upon the date of the filing of the final decree, but not later than the date of the filing of the final decree.

b. Upon the date when title to the real property shall have vested as provided in subdivision a of this section, the city, in a capital project proceeding, shall become and be seized in fee of or of an easement in, over, upon, or under such real property as the mayor may have determined, the same to be held, appropriated, converted and used for the purposes for which the proceeding was instituted.

c. The city or any person acting under its authority, or the agency which upon the acquisition of title to such real property will have jurisdiction thereof, shall immediately or any time thereafter take possession of such property without suit or other judicial proceedings.

In April of 1965, a condemnation proceeding was instituted by the City in relation to the property of the petitioner. From the time of the passage of title to the City until the latter part of 1968, the condemnation proceeding was the subject of litigation before Judge Abraham Geller of the Supreme Court of New York County. The litigation involved the amount of the award and not the right of the City to condemn the property. In the latter part of 1968, a final award was made in the condemnation proceeding establishing the ultimate amount to be paid to the petitioner for the property taken from it. Subsequent to the final award, the only issue still outstanding was the amount or rate of interest to be paid by the City on the ultimate award. In 1970, the New York State Court of Appeals, i.e., the highest court of the State of New York, made a determination as to the rate of interest to be paid on the ultimate award.

On November 29, 1965, "notice of advance payment of awards" was published in the City Record giving notice that the comptroller was

ready to pay the owner of Damaged Parcels 7 and 8 on December 10, 1965. This notice was published in accordance with the provisions of section B15–29.0 of the Administrative Code of the City of New York which provides:

Advance payments.—The mayor may authorize the comptroller to pay to the person entitled to an award for real property acquired in a proceeding, in advance of the final determination of his damages, a sum to be determined by the corporation counsel, after an appraisal of the damages sustained by such person by the expert or experts employed by the corporation counsel not exceeding seventy-five per cent of such appraisal of the damages sustained by such person, less any liens or encumbrances of record upon such property, which amount shall be certified to the comptroller by the corporation counsel. The mayor shall authorize the comptroller to cause to be published in the City Record for ten consecutive days a notice stating that he is ready to pay such persons entitled to awards for real property acquired in such proceeding, in advance of the final determination of their damage, sums to be so determined by the corporation counsel. Such notice shall describe the property for which such advance payment may be made by tax block and lot numbers or the damage parcel numbers of the real property involved. Before any such advance payment shall be made, the comptroller shall procure the certificate of the corporation counsel showing the amount of the appraisal of the damages sustained, the portion thereof to be paid to the claimant, and that the person, to whom payment is to be made, is the person legally entitled to receive the same. If the mayor shall authorize such a partial payment in advance to any person entitled to an award, pursuant to this section, interest on the sum so authorized to be paid in advance shall cease to run on and after a date five days after such person shall have been notified by mail, by publication pursuant to this section or otherwise that the comptroller is ready to pay the same. In case the person entitled to an award at the date of the vesting of title to the real property in the city shall have transferred or assigned his claim, such transfer or assignment made by him, or by his successor in interest or legal representative, shall not become binding upon the city unless the instrument or instruments evidencing such transfer or assignment shall have been executed and filed in the office of the comptroller prior to any such advance payment. When any such advance payment shall have been made, the comptroller, on paying the awards made for the real property acquired, shall deduct from the total amount allowed as compensation the sum advanced plus interest thereon from the date of the payment of such advance to the date of the final decree and the balance shall be paid as provided in section B15–28.0 of the code.

On December 15, 1965, the petitioner by Thomas S. Donnelly, assistant secretary of petitioner, received four checks in the total amount of $70,000 as an "Involuntary Advance Payment" for the appropriation of its property by the City of New York. Three of the checks received on December 15, 1965, in the total amount of $66,500, were deposited in the petitioner's bank account on or about December 22, 1965. The total amount of $70,000 was paid to the petitioner by the City of New York without any restrictions as to its use or disposition. At the time of the payments on December 15, 1965, the adjusted basis of the petitioner's property was $55,005.53.

On November 6, 1968, the petitioner by John J. Donnelly, treasurer of petitioner, received $104,570.95 as the "Second Separate and Partial Final Decree" for the condemnation of its property located at 80 Duane Street.

The petitioner has not filed and has not caused to be filed an application for an extension of time in which to replace the property appropriated by the City of New York in 1965. Prior to March 10, 1969, petitioner also did not purchase any property to replace its property appropriated by the City.

Under date of March 10, 1969, a contract of sale was entered into between the petitioner and one Jay R. Strisik for the sale by the said Jay R. Strisik of property located at 83–85 White Street, Manhattan, to the petitioner. Upon the signing of the contract, the petitioner paid $18,500 to the seller. Pursuant to the contract, the petitioner acquired title to the premises at 83–85 White Street, New York, N.Y., on April 21, 1969. The petitioner moved into these premises and is presently conducting its business operations therefrom. The total purchase price for the property was $235,000.

#### OPINION

In this case, the City of New York condemned certain property of the petitioner in 1965. An advance payment of $70,000 with respect to such property was made to the petitioner in 1965, and the petitioner received an additional and final payment of $104,570.95 in 1968 pursuant to a determination of the Supreme Court of New York County. In 1970, the New York State Court of Appeals determined the rate of interest to be paid on the total amount of the award. At the time of the payment in 1965, the adjusted basis in the property was $55,005.53. In 1969, the petitioner replaced the property with other property similar or related in service or use. The petitioner has not filed and has not caused to be filed an application for an extension of time in which to replace the property appropriated by the City in 1965.

The issue for decision is whether the petitioner should recognize gain in 1965 on account of payments made to it by the City for its condemnation of the petitioner's property, or whether the petitioner is entitled to nonrecognition treatment for such gain under section 1033.

Section 1033 provides generally for the recognition of gain realized as a result of the involuntary conversion of property. If within a prescribed period the amount realized on the conversion is invested in other similar property, the taxpayer may elect nonrecognition treatment under section 1033(a). The reinvestment period is prescribed in

section 1033(a)(3)(B), which at all times pertinent to this case provided:[2]

(B) Period within which property must be replaced.—The period referred to in subparagraph (A) shall be the period beginning with the date of the disposition of the converted property, or the earliest date of the threat or imminence of requisition or condemnation of the converted property, whichever is the earlier, and ending—

(i) one year after the close of the first taxable year in which any part of the gain upon the conversion is realized, or

(ii) subject to such terms and conditions as may be specified by the Secretary or his delegate, at the close of such later date as the Secretary or his delegate may designate on application by the taxpayer. Such application shall be made at such time and in such manner as the Secretary or his delegate may by regulations prescribe.

The respondent argues that when the petitioner received $70,000 in 1965, it realized gain; that the realization of such gain started the running of the period within which the realty had to be replaced in order for the petitioner to qualify for nonrecognition treatment under section 1033; that the realty was not replaced within the period established by section 1033(a)(3)(B)(i); and that the petitioner failed to obtain permission to replace the realty within a longer period as prescribed in section 1033(a)(3)(B)(ii). For these reasons, the respondent concludes that the petitioner's gain on the involuntary conversion of the realty must be recognized in 1965. See *Adolph K. Feinberg*, 45 T.C. 635, 640 (1966), affd. 377 F. 2d 21 (C.A. 8, 1967), and *Estate of Jacob Resler*, 17 T.C. 1085 (1952).

The petitioner does not contend that the realty was replaced before 1969, nor does the petitioner contend that it has filed or caused to have filed on its behalf an application for an extension of the time for replacement of the realty. Rather, the petitioner contends that it did not realize gain until 1968 when the full amount of the award was finally determined.

Amounts received by a taxpayer under a claim of right, not subject to any limitation on use, are taxable to the taxpayer in the year received even though at the time of the receipt conditions exist which might require the taxpayer to return all or part of such earnings or payments. E.g., *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417 (1932); *United States* v. *Lewis*, 340 U.S. 590 (1951); *W. B. Rushing*, 52 T.C. 888 (1969); *Monroe Abstract Corporation*, 41 B.T.A. 5 (1940). A clear statement of the claim-of-right doctrine is found in *Whitaker* v. *Commissioner*, 259 F. 2d 379 (C.A. 5, 1958), affirming 27 T.C. 399 (1956), where the court stated at page 382:

---

[2] In 1969, sec. 1033(a)(3)(B)(i) was amended and now provides that the involuntarily converted property must be replaced within 2 years after the close of the first taxable year in which any gain on the conversion is realized.

The claim of right doctrine is firmly established in our tax law.[3] If a taxpayer receives earnings under a claim of right, without restriction as to its use, it is taxable income in the taxable year when he receives the earnings. The principle applies even though in a later year he may be required to refund all or part of the money. It applies whether returns are on the cash or accrual basis. Any amount repaid is deductible in the year of repayment (on the cash basis) or the year in which the liability to repay becomes fixed (on the accrual basis). * * * [Footnote omitted.]

After an appraisal of the compensable value of the property, the City of New York made a payment of $70,000 to the petitioner in 1965 in advance of a final determination as to the full amount to be paid to the petitioner. The payment was not subject to any limitation or restriction as to its use. Thus, the petitioner received the advance payment under a claim of right. *Conlorez Corp.*, 51 T.C. 467 (1968); and see *North American Oil Consolidated*, *supra.*, and *Estate of Jacob Resler*, *supra.* See also *Whitaker* v. *Commissioner*, *supra.*

It is true that the petitioner may have had a contingent liability to the City to repay part of the advance payment; however, this liability was inchoate and it did not prevent the petitioner from utilizing the advance payment for its own purposes. The cases of *McGuirl* v. *Commissioner*, 74 F. 2d 729 (C.A. 2, 1935), certiorari denied 295 U.S. 748; *Vim Securities Corporation*, 43 B.T.A. 759 (1941), affd. 130 F. 2d 106 (C.A. 2, 1942); and *Driscoll Bros. & Co.* v. *United States*, 221 F. Supp. 603 (1963), are distinguishable from the instant case. In those cases, no amounts were paid by the condemning authority and received by the owners of the condemned property until all litigation had been completed or until the administrative authorities had determined and given final approval to the total amount of the award. Similarly, *Henry Hess Co.*, 16 T.C. 1363 (1951), affirmed on this point and reversed on other grounds in 210 F. 2d 553 (C.A. 9, 1954), is also distinguishable.

On this basis, we conclude that the petitioner realized gain in 1965 when it received an advance payment from the City of New York which exceeded its basis in the condemned property. The realization of this gain started the running of the period within which the property had to be replaced in order for the petitioner to qualify for nonrecognition treatment under section 1033. Since the realty was replaced no earlier than March, 1969, it was not replaced within the 1-year period prescribed by section 1033(a)(3)(B)(i) as it existed at all times pertinent to this case. The petitioner also failed to obtain permission to replace the property within a longer period as prescribed by section 1033(a)(3)(B)(ii). Having failed to meet the requirements of these provisions, the petitioner does not qualify for nonrecognition treatment under section 1033.

*Decision will be entered for the respondent.*