FRANK O. MAIXNER AND LOUISE M. MAIXNER, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CLEMENT KUBICEK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 70882, 70883. Filed October 30, 1959.

*Louis J. Moriarty, Esq.*, for the petitioners.
*Robert A. Roberts, Esq.*, for the respondent.

FISHER, *Judge:* These proceedings were consolidated on the basis of agreement of counsel. They involve deficiencies in income tax determined by respondent for the taxable years 1954 and 1955 as follows:

| Docket No. | Name of petitioners | Year | Deficiency in income tax |
|---|---|---|---|
| 70882 | Frank O. Maixner and Louise M. Maixner | 1954 | $1,050.16 |
| | Frank O. Maixner and Louise M. Maixner | 1955 | 661.23 |
| 70883 | Clement Kubicek | 1955 | 745.63 |

The principal issues presented are (1) whether certain agreements between petitioners and the highway department of the State of Minnesota were obtained as a result of threats of condemnation and effected an involuntary conversion of earth materials removed from petitioners' properties within the meaning of section 1231, and (2)

whether petitioner Kubicek is to be limited to a standard deduction not in excess of $500 for the taxable year 1955. (Note: In view of our conclusion, *infra*, that the agreements were obtained as a result of threats of condemnation, it is unnecessary for us to consider whether said agreements constituted sales of earth materials or leases under either section 1221 or 1231 of the Code of 1954.)

FINDINGS OF FACT.

Some of the facts are stipulated, and are incorporated herein by reference.

Frank O. and Louise M. Maixner (petitioners in Docket No. 70882) were husband and wife and resided at Route 2, Owatonna, Steele County, Minnesota, during the taxable years 1954 and 1955. They filed a joint Federal income tax return (Form 1040) for each of the years 1954 and 1955 with the district director of internal revenue for the district of Minnesota.

On April 22, 1954, petitioners Maixner executed an instrument entitled "Agreement for Taking of Earth Materials." This instrument, which was also executed by E. J. Rowland of the Department of Highways, State of Minnesota, provides, in part, as follows:

STATE OF MINNESOTA

DEPARTMENT OF HIGHWAYS

*AGREEMENT FOR TAKING OF EARTH MATERIALS*

\*     \*     \*     \*     \*     \*     \*

Name Frank O. Maixner (Louise)   Address Route #2, Owatonna, Minnesota We hereby certify that we are the owners of the property described herein and have the power to give the rights hereinafter granted, and for and in consideration of the sum of One Dollar, the receipt whereof is hereby acknowledged, and further payments herein specified do___ hereby grant unto the State of Minnesota, or its nominee the right to enter upon that portion of_____ the south half of the southeast quarter (S½SE¼) of Section 29, Twp. 106 N. Range 20 W., County of Steele, Minnesota, described as follows, to-wit:

That part of the north half of the above described tract lying west of the Straight River, except the west 500 feet thereof;

(The State shall have the exclusive right to remove materials from the above premises and no materials shall be removed by others without written permission from the Commissioner of Highways).

for the purpose of removing and to remove therefrom earth, gravel and any or all materials required for the use in the improvement, repair and maintenance of Trunk Highways for a period of 2 years from the date hereof_____.

The State shall also, under this agreement, be allowed to enter upon the above described lands for the purpose of investigation and tests of any material located thereon.

The State shall have the right of ingress to and egress from the hereinbefore described property and the owners hereby releases the State from all claims for damages by virtue of the reasonable use, according to the terms of this agreement, of said property.

Necessary stripping to be done by and at the expense of the State. Waste material to be placed between the east edge of the pit and the river and leveled off.

Payments for materials taken under this agreement shall be on the basis of records kept by the Commissioner of Highways, or his agent, and shall be made by the State, or its nominee, in the following manner:

At the rate of 14 cents per cubic yard of sand or gravel payable quarterly.

At the rate of ___ cents per cubic yard of _____ payable quarterly.

At the rate of 10 cents per ton of sand or gravel payable quarterly.

Under the provisions of the instrument entitled "Agreement for Taking of Earth Materials," the Department of Highways, State of Minnesota, removed approximately 180,000 tons of sand and gravel from land described in the said instrument. Pursuant to the terms of this instrument, the Maixners received $10,066.10 during the year 1954 and $7,925.70 during the year 1955.

The property described in the above-mentioned instrument covered 12 acres of an 80-acre farm located in Steele County, Minnesota. This farm was owned during the years involved herein by the Maixners and was cultivated by tenants of the said petitioners under a share-crop arrangement.

The aforesaid 180,000 tons of sand and gravel were removed from approximately 7 acres of the 12-acre tract described in the above-mentioned instrument. As a result of the removal of such sand and gravel, the 7-acre tract could not be used for raising crops as it was thereafter covered with water.

The Maixners were unaware of the gravel deposits on their property prior to being advised of such deposits on April 22, 1954, by R. C. Sandman, a road engineer, in the employ of Minnesota's Department of Highways whose duties included supervision of purchase of materials for State highway purposes.

After advising the said petitioners of the gravel deposits, Sandman sought to acquire use of such deposits for Minnesota's Department of Highways. The location of the Maixner gravel was in about the middle of the job and could be hauled both north and south.

The Maixners refused at first to execute an agreement which would permit removal of gravel from their property.

The Maixners and Sandman negotiated with respect to terms and payment for any gravel removed. Sandman advised the Maixners that if they would not agree to the terms of his offer he would have the gravel deposits condemned. As a result of these discussions, the Maixners, on April 22, 1954, executed the instrument entitled "Agreement for Taking of Earth Materials."

Clement Kubicek (petitioner in Docket No. 70883 and hereinafter referred to as Kubicek) resided at Blooming Prairie, Steele County,

Minnesota, during the taxable year 1955. He filed a separate Federal income tax return (Form 1040) for the taxable year 1955 with the district director of internal revenue for the district of Minnesota.

During the taxable years involved herein Kubicek owned and operated a 40-acre farm and blacksmith shop in Blooming Prairie, Steele County, Minnesota.

Prior to November 4, 1953, the aforementioned Sandman contacted Kubicek on several occasions in an effort to get Kubicek to enter into an agreement allowing the Minnesota State highways department to remove gravel from Kubicek's farm. Kubicek did not want to enter into such an agreement or sell gravel to the State. The State highway department needed the Kubicek gravel, which was of a very high type, scarce in the vicinity. Other sources of like gravel were too far away. Sandman told Kubicek they could condemn the land and take the gravel. Kubicek consulted his attorney, who advised him that the State could condemn the property. Having been so advised, and as a result of Sandman's statements concerning condemnation, Kubicek, on November 4, 1953, executed an agreement with the Minnesota State highways department entitled "Agreement for Taking Earth Materials" similar in form (but differing in rate per cubic foot and other factors, such as descriptions, applicable only to Kubicek) to that executed by the Maixners.

Under the provisions of the Kubicek instrument entitled "Agreement for Taking of Earth Materials," the Department of Highways, State of Minnesota, removed sand and gravel from 2 to 3 acres of the 4- to 5-acre tract described in the aforesaid instrument. As a result of such removal of sand and gravel, the said 2 to 3 acres could not be used for raising crops as it was thereafter covered with water.

Pursuant to the terms of the above-mentioned instrument, Kubicek received the sum of $6,467.61 during the taxable year 1955.

In the event R. C. Sandman determined that certain property should be condemned in order to acquire materials for use of the Minnesota Department of Highways, he would submit such recommendation of condemnation to his then immediate superior in the Department of Highways, K. J. Mason. If Sandman's recommendation was accepted by those in ultimate authority, a recommendation for condemnation would be forwarded to the office of the attorney general, State of Minnesota, for appropriate action.

Petitioner Clement Kubicek was married during the year 1955. He filed a separate return for that taxable year on which he claimed a standard deduction in the amount of $621.25.

OPINION.

## I. *Threat or Imminence of Condemnation.*

We agree with petitioners' contention that they are entitled to capital gains treatment of the proceeds of the gravel under the provisions of section 1231 of the Code of 1954 on the theory that such proceeds were gains from the compulsory or involuntary conversion of property as a result of the threat or imminence of condemnation.

We have no doubt that Sandman's statements to petitioners were taken by them to mean that if they did not enter into the agreements proposed by him, the gravel deposits would be condemned. It is clear that their execution of the agreements was the result. Since Sandman was a highway engineer supervising purchases of road materials and since it was apparent from his conduct in negotiating for the acquisition of such materials, and the procuring of agreements therefor, that he was representing the State Highway Commission, it was reasonable for petitioners to infer that he spoke with sufficient authority to make it likely that his threats could and would be carried out if petitioners did not execute the agreements he presented.

We think that a realistic construction of the statute in this respect requires no more. In the same vein, it is our view that Rev. Rul. 58–557 (1958–2 C.B. 402) is too restrictive in the requirements therein set forth.

No issues appear to be raised with respect to compliance with other provisions of section 1231, such as the holding period. We, accordingly, sustain petitioners' contention with respect to allowance of capital gains treatment.

In view of our holding, *supra*, there is no occasion for us to consider whether the agreements for the taking of earth materials constituted leases or effected sales within the meaning of either section 1221 or 1231 of the Code of 1954.

## II. *Kubicek—Standard Deduction.*

Petitioner Kubicek was married during the year 1955. He filed a separate return for that year on which he claimed a standard deduction in the amount of $621.25. Section 141 of the 1954 Code expressly provides that, in the case of a separate return by a married individual, the standard deduction shall not exceed $500. Respondent properly limited Kubicek's standard deduction accordingly.

*Decisions will be entered under Rule 50.*