Carson Estate Company v. Commissioner.
Carson Estate Co. v. Commissioner
Docket No. 92299.
United States Tax Court
T.C. Memo 1963-90; 1963 Tax Ct. Memo LEXIS 253; 22 T.C.M. (CCH) 425; T.C.M. (RIA) 63090; March 28, 1963
A. Calder Mackay, Esq., 523 W. 6th St., Los Angeles, Calif., and Adam Y. Bennion, Esq., for the petitioner. Robert L. Gnaizda, Esq., for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: A deficiency of $13,479.60 in petitioner's income tax for the year 1957, all of which is in dispute, has been determined by the respondent. The question for decision is whether certain real property was sold by the petitioner to the County of Los Angeles, California, under threat or imminence of condemnation so that it qualified as an involuntary conversion under section 1033 of the Internal Revenue Code of 1954. The parties have stipulated that within the time permitted by law the petitioner invested funds received from the County of Los Angeles in the acquisition of replacement *254 property similar or related in service or use to the converted property. Findings of Fact Some of the facts were stipulated and are so found. Carson Estate Company (hereinafter called petitioner) is a corporation, operating as a personal holding company, organized and existing under the laws of the State of California. It filed its corporation income tax return for the taxable year 1957 with the district director of internal revenue, Los Angeles, California. On or about November 27, 1956, the Board of Supervisors for the County of Los Angeles authorized the institution of condemnation proceedings to acquire 7.79 acres of land for the purpose of making a park site to be known as Victoria Park. Approximately 1.7 acres of this land were owned by the petitioner. Following this action, Thomas Caldwell Cooper, Jr., president of petitioner corporation, had conferences and conversations with Robert B. Heuer, Assistant Administrative Officer, and Gregory A. Lins, Property Agent, Property Management Division, both of whom were employees and duly authorized representatives of the Board of Supervisors, concerning the sale of the property to the County without the necessity for condemnation. *255 On April 4, 1957, Gregory A. Lins sent a letter to the petitioner which reads, in part as follows: This will confirm the recent conversation between you and the undersigned in which you were advised of the County's intention to acquire that certain 7.79 acre strip of land lying southerly of Tract No. 16879 and westerly of Towne Avenue. Attached are Options in favor of the County of Los Angeles for your consideration and signature. Upon receipt of 3 signed copies a Notice of Intention to purchase will be prepared and processed to the Board of Supervisors for acceptance and possible approval. For tax purposes this sale on your part may be considered an "involuntary conversion," for it is the County's intention to proceed to condemnation in order to acquire the subject 7.79 acre parcel for recreational purposes, if the purchase cannot be negotiated. Another letter dated May 8, 1957, signed by Robert B. Heuer and addressed to the petitioner, stated: Confirming our recent telephone conversation regarding "involuntary conversion" this office recently contacted Mr. McCumber of the Bureau of Internal Revenue, Treasury Department of the United States Government. Mr. McCumber stated *256 that a sale of real property made by an individual or corporation to a public body for public purposes is considered by the Treasury Department to be an involuntary conversion regardless of whether or not an action in condemnation is filed with the County Clerk. After the Notice of Intention to purchase was published in the Gardena Valley News on July 18, July 25 and August 1, 1957, the property was acquired by the County of Los Angeles on August 22, 1957, and the petitioner was paid the sum of $50,640.85. No condemnation proceedings with respect to the property were ever filed in court. Petitioner did not report the gain from the sale of the property as taxable income in its income tax return for 1957. The respondent, however, in his notice of deficiency determined that a gain of $44,722.95 should have been included in petitioner's taxable income for that year because the sale did not qualify as an involuntary conversion under the provisions of section 1033, Internal Revenue Code of 1954. Opinion Whether property is converted under a threat or imminence of condemnation is a question of fact with the petitioner having the burden of proof. In our judgment *257 this petitioner has met its burden with convincing evidence. Relying on Rev. Rul. 58-557, 1958-2 C.B. 402, the respondent advances the argument that, since the Board of Supervisors for Los Angeles County had not indicated by public resolution or public act that the petitioner's property would be condemned, there was no "threat or imminence" of condemnation within the meaning of the statute. This argument is not persuasive. We considered and rejected it in Frank O. Maixner, 33 T.C. 191 (1959). Speaking through Judge Fisher in that case, we said at page 195: In the same vein, it is our view that Rev. Rul. 58-557 (1958-2 C.B. 402) is too restrictive in the requirements therein set forth. Section 1033, and its prototype in other revenue acts, "was designed to prevent an inequitable incidence of taxation." Washington Market Co., 25 B.T.A. 576 (1932). Being a relief provision by which a taxpayer may postpone the taxation of so much of the gain derived from an involuntary conversion as it uses in replacement, we think it should be liberally construed to effectuate its purpose. Paul Haberland, 25 B.T.A. 1370 (1932). *258 In this setting we are unwilling to tortuously construe the plain statutory words "threat or imminence of requisition or condemnation" in such way as to subvert their meaning to the administrative concept of what they ought to be rather than what they are. Certainly the "threat or imminence" must be a real exercise of the power of condemnation, sufficient to create a legal compulsion. But "threat" as used in this context means a declaration of intention to condemn private property for public use. "Imminence" denotes something that is ready to happen; near at hand; inpending. Consequently, in determining whether a "threat or imminence" of condemnation existed in the instant case, we have considered the following factors: Was the Board of Supervisors of Los Angeles County authorized by law to exercise the power of eminent domain? Did it in fact authorize condemnation proceedings against the petitioner's property? Did the petitioner have knowledge of the official action of the Board of Supervisors pertaining to the impending condemnation? Was it reasonable for the petitioner to infer that Heuer and Lins acted with sufficient authority to make it likely that their "threats" could and would *259 be carried out by the Board of Supervisors if the purchase of petitioner's land could not be negotiated? It is abundantly clear that the facts in this case require affirmative answers to these crucial questions. Our decisions in Frank O. Maixner, supra, and Davis Regulator Co., 36 B.T.A. 437, 443 (1937), are dispositive of the issue. Cf. Washington Railway and Electric Co., 40 B.T.A. 1249, 1253 (1939); Piedmont-Mt. Airy Guano Co., 8 B.T.A. 72 (1927); and The Davis Co., 6 B.T.A. 281 (1927). On the record before us we have no hesitancy in holding that the sale was made because of the "threat or imminence" of condemnation. The respondent's determination must therefore be disapproved. Decision will be entered for the petitioner.