THE DAVIS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5497.   Promulgated February 21, 1927.

1. Only losses sustained within the taxable year are deductible.
2. A sale made in compliance with an insistent request by a local chamber of commerce that a new industry might acquire the desired location, does not constitute an involuntary conversion under section 234 (a) (14) of the Revenue Act of 1921.

*W. D. Wall, C. P. A.*, for the petitioner.
*L. C. Mitchell, Esq.*, for the respondent.

This proceeding results from the determination by the respondent of a deficiency in income and profits taxes for the year 1920 in the amount of $2,219.21, all of which is in controversy. The deficiency is due to the action of the respondent in adding to petitioner's income the amount of $1,055.35, received as a rental charge for the use of milk cans and placed in a reserve maintained by it to cover the loss on milk cans; and amounts of $4,663.43 and $4,763.63, representing profits on property sold and on insurance proceeds from property destroyed by fire, respectively, both of which amounts petitioner contends were proceeds from involuntary conversions and were deductible under section 234 (a) (14) of the Revenue Act of 1921, as they were immediately expended in the acquisition of similar property.

FINDINGS OF FACT.

The petitioner is an Ohio corporation, engaged in the creamery business, with its principal office at Newark. A large number of milk cans were essential to its business. It was necessary for it to supply the farmer producers with cans to bring milk to the receiving stations and assemblage plants. Cans in large numbers were also used to ship its product in fluid form to consumers located at other points. The petitioner was continually burdened with a loss through failure to return the cans or by reason of repairs required because of damage to them. This loss was common to both the receiving and sales ends of the petitioner's operations. The cans were not inventoried with the other assets as, due to the number out at all times, it was impossible to make a complete inventory without closing down the business.

Prior to the year in question, the petitioner established the practice of charging for the use of cans furnished to producers but not for those sent to consumers. This charge was in the nature of a deduction of so much per month from the producers' pay check for

the use of the cans. The amounts thus collected were considered by petitioner as reimbursement, in part at least, for the cost of repairs and replacements and were not included in income but were placed in a reserve fund to cover the losses on those items. The amount of such charges collected and placed in reserve during 1920 was $1,055.35. The extent of the loss for the year in question, from failure to return cans, and the cost of repairs, was not established.

The petitioner maintained an assemblage plant at Lexington, Ohio, for the purpose of receiving and processing the milk of the producers in that community, preparatory to shipment to the common plant. This property consisted of about two and one-half acres, on which there was a group of buildings which were about 25 feet in width and had a total length of about 200 feet. The buildings paralleled a railroad track which furnished shipping facilities. The chamber of commerce or board of trade of that locality endeavored to interest the Kennedy Foundry & Manufacturing Co., of Mansfield, Ohio, in establishing a new foundry there. One of the points entering into the negotiations for the new enterprise was the ability to secure for it a desirable location. The question narrowed down to whether the property of the petitioner's plant could be acquired for the purpose. The chamber of commerce or board of trade requested that the petitioner make the new enterprise possible by selling its property to the foundry company. The petitioner, fearing that refusal to comply with the request would cause it to lose the good will of the community to the advantage of its competitors, sold the property as requested. The sale was made on or about May 24, 1920, and payment of the purchase price was completed by the giving of the balance in notes during the next month. The selling price exceeded the cost or other basis of the property sold by $4,663.49, which amount is admitted by the petitioner to be the taxable profit on the transaction if the sale was not an involuntary conversion. On May 6, 1920, petitioner purchased another site and proceeded without delay to erect a new building for its use. This building was completed on July 1, 1924, at a total cost of $6,454.41, which amount was in excess of the selling price of the old plant. The petitioner was not required to vacate the old plant until the new building was completed.

Another assemblage plant was maintained at Alexandria, Ohio, in a rented building. The equipment installed therein was owned by petitioner and was covered by insurance. The building occupied, together with most of the equipment, was destroyed by fire on August 1, 1920. The petitioner during 1920 received $8,892 as proceeds from fire insurance policies on the equipment destroyed. The depreciated cost of the equipment destroyed, after salvage value was taken into consideration, was $4,128. It appearing that the

owner of the building was unable or unwilling to replace the building, the petitioner purchased the site and on August 31, 1920, began the erection of a new building which was completed during February of 1921. New equipment was purchased and, together with such equipment as was salvaged from the fire, installed on or before the completion date. The cost of the new equipment, the repairs on the equipment salvaged from the fire, and the installation, was $4,492. The new equipment had a slightly larger capacity than that of the old.

The petitioner keeps its books upon the accrual basis. The amount of the reserve for losses and repairs to milk cans, the profits from the alleged forced sale of the Lexington plant, and the excess of the fire insurance proceeds from the Alexandria plant over the cost or other basis of such equipment, were all added by the respondent to the petitioner's income for 1920.

### OPINION.

MILLIKEN: The first issue questions the correctness of the respondent's action in adding the reserve for losses and repairs to milk cans to petitioner's income. The record shows only that such losses were substantial over a period of years and that the amount collected in 1920 for the use of cans was not included in income but was set up as a reserve to cover the losses. Only losses sustained within the taxable year are deductible. *Appeal of Hanff-Metzger, Inc.*, 4 B. T. A. 1214, and cases there cited. As we are unadvised as to the extent of such losses sustained within the taxable year in question, we must sustain that portion of the deficiency resulting from the addition of the amount of the reserve to taxable income for the year.

The two remaining points concerning the proper treatment to be accorded the proceeds from the alleged forced sale and from fire insurance policies on property destroyed, present questions requiring an interpretation of section 234(a)(14) of the Revenue Act of 1921, which provides as follows:

(14) If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, (B) theft or seizure, or (C) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or in the acquisition of 80 per centum or more of the stock or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion

of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross income under prior income, war-profits and excess-profits tax Acts.

An involuntary conversion under the statute may result only from the three specified causes. The contention that the alleged forced sale was such a conversion can only look to the cause last enumerated for support. Can it be said that a sale, made at the request of the local chamber of commerce, results from the exercise of power of requisition or condemnation or the threat to exercise such power? No doubt, the appeal made by the local body was a most earnest and urgent one. Sufficient pressure was brought to bear to lead petitioner to the conclusion that it must comply or suffer the diminution of the good will it had built up in the community. The petitioner knew that it could not be coerced by legal means into making the sale, as the power of requisition or condemnation did not exist. However, the exercise of such power, or the imminence thereof, is essential to an involuntary conversion, due to the cause under discussion. The sale was made because it was deemed to be good business policy. We are unable to see that the sale was made by reason of the exercise of the power of requisition or condemnation or the imminence thereof within the contemplation of the statute.

We come, then, to a consideration of the proceeds from the fire insurance policies on the equipment destroyed in August of 1920. The respondent contends that there was no involuntary conversion within the meaning of the statute, for the new equipment was not acquired immediately, the acquisition being delayed until after the building had been completed in 1921. Under the facts in the instant case we think the contention without merit. After the fire the petitioner was without suitable quarters to house its plant, and the evidence is all to the effect that the construction of the new building was begun and completed without delay. The new equipment was purchased and installed as soon as possible.

The respondent also urges that the new equipment had a capacity in excess of the capacity of the equipment destroyed. In the *Appeal of Cotton Concentration Co.*, 4 B. T. A. 121, we considered the effect of a slightly increased capacity in similar property acquired. We held in that case that a slight variance in capacity was not fatal to the deduction allowable under the involuntary conversion provision. We think that decision disposes of the respondent's contention in the case at bar. The deduction is such part of the profits—$4,764— as the part of the proceeds expended—$4,492—bears to the net proceeds—$8,892.

*Judgment will be entered on 15 days' notice, under Rule 50.*