PIEDMONT–MT. AIRY GUANO CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8542.     Promulgated September 16, 1927.

1. Sale of property *held* not to be within the provisions of section 234 (a) (14) of the Revenue Act of 1921.
2. March 1, 1913, value of land for purpose of computing gain or loss determined.

*Theodore B. Benson, Esq.,* and *Edgar T. Wagner, Esq.,* for the petitioner.
*J. W. Fisher, Esq.,* for the respondent.

A deficiency in income taxes has been determined by the Commissioner for the calendar year 1920 in the amount of $16,306.51. Petitioner alleges that respondent erred in his determination of the March 1, 1913, value of the site on which its plant was located and in refusing to treat the proceeds from the sale of the property under section

234(a) (14) on the ground that the sale was made because of the imminence of condemnation proceedings.

FINDINGS OF FACT.

In 1903 petitioner purchased for $31,000 a tract of land containing 1.88 acres at Locust Point, facing on the inner harbor of the City of Baltimore, Md., and within the city limits. Located thereon was a plant in which petitioner engaged in the manufacture of fertilizer. The process of manufacture required the use of sulphuric acid, which resulted in heavy acid fumes being given forth which were destructive to near-by property and offensive to residents of the neighborhood. The fumes had a most irritating effect on the eyes, causing them to become inflamed, and also affected the mucous membrane of the eyes and air passages. Complaints had been made from time to time to the city authorities and also directly to the petitioner, and certain city officials had called on officers of petitioner with a view to seeing what, if anything, could be done to remedy the situation.

In 1920 petitioner sold its plant on Locust Point, including the land on which it was located, to the American Sugar Co., which latter company immediately tore down the buildings formerly used by petitioner and utilized the property for other purposes. Immediately upon closing the sales contract petitioner purchased a plant site on Curtis Bay and proceeded to build thereon a plant at a cost of $850,000, which plant was larger and more modern, though not as conveniently located, as the plant at Locust Point.

The price received by petitioner for the land and buildings at Locust Point was $268,082.50. The gross cost of the buildings and machinery at the date of sale was $191,349.53 and the depreciation charged off and allowed was $10,851.80, leaving a net cost for the improvements of $180,497.73. In computing the total cost of the property for the purpose of determining the gain thereon, respondent added to the net cost of the improvements the amount of $37,000 as representing the cost of the land, thus making a total cost of $217,497.73 and determined a net profit on the sale of $50,584.77. The difference between the cost of the land as used by respondent of $37,000 and the original actual cost of $31,000, viz, $6,000, represented the cost of certain additional improvements other than buildings and machinery, which improvements were subsequently destroyed and the cost thereof does not enter into the computation of gain or loss.

The fair market value of the site at Locust Point, not including buildings and machinery, as of March 1, 1913, was $70,000.

In an appeal by this petitioner for the years 1917 and 1918 it was held entitled, under section 234(a) (14) of the Revenue Act of 1921, to deduct from the proceeds of insurance the amount thereof used

in replacing the property destroyed by fire. *Piedmont-Mt. Airy Guano Co.*, 3 B. T. A. 1009.

### OPINION.

ARUNDELL: Section 234 (a) (14) of the Revenue Act of 1921, which is applicable to transactions under prior revenue acts, reads as follows:

If property is compulsorily or involuntarily converted into cash or its equivalent as a result of (A) its destruction in whole or in part, (B) theft or seizure, or (C) an exercise of the power of requisition or condemnation, or the threat or imminence thereof; and if the taxpayer proceeds forthwith in good faith, under regulations prescribed by the Commissioner with the approval of the Secretary, to expend the proceeds of such conversion in the acquisition of other property of a character similar or related in service or use to the property so converted, or in the acquisition of 80 per centum or more of the stock or shares of a corporation owning such other property, or in the establishment of a replacement fund, then there shall be allowed as a deduction such portion of the gain derived as the portion of the proceeds so expended bears to the entire proceeds. The provisions of this paragraph prescribing the conditions under which a deduction may be taken in respect of the proceeds or gains derived from the compulsory or involuntary conversion of property into cash or its equivalent, shall apply so far as may be practicable to the exemption or exclusion of such proceeds or gains from gross income under prior income, war-profits and excess-profits tax Acts.

The evidence is entirely insufficient to warrant the conclusion that petitioner sold its property because of the imminence of condemnation proceedings. There were located on Locust Point several fertilizing plants and the record would indicate that one of these plants is still operating there, though it is said that it is not so obnoxious as was petitioner's plant. While complaints were made, there is no evidence of official action being taken or seriously contemplated by the authorities. Cf. *The Davis Co. v. Commissioner*, 6 B. T. A. 281.

This leaves for consideration solely the question of the value of the real estate on March 1, 1913. There was no dispute between the parties as to the value of the improvements. The only evidence as to the value of the land was that offered by petitioner which was in the form of opinion evidence by qualified real estate men. Their evidence leaves us in little doubt that the land was on March 1, 1913, of a value of at least $70,000 and this figure should be used in determining the profit, if any, on the sale of petitioner's plant at Locust Point in 1920.

Any change in invested capital for the taxable year which may result from the decision in *Piedmont-Mt. Airy Guano Co.*, 3 B. T. A. 1009, should be adjusted in the recomputation to be made under the decision in the present proceeding.

*Judgment will be entered on 15 days' notice, under Rule 50.*

Considered by STERNHAGEN and LANSDON.