Robert K. Hitke and La Verne E. Hitke, et al. [1] v. Commissioner. Hitke v. Commissioner
Docket Nos. 81383, 81386, 81389.
United States Tax Court
T.C. Memo 1961-66; 1961 Tax Ct. Memo LEXIS 283; 20 T.C.M. (CCH) 332; T.C.M. (RIA) 61066; March 10, 1961
Wyatt Jacobs, Esq., and Joseph B. Lederleitner, Esq., for the petitioners. Seymour I. Sherman, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax for the year 1955: Docket No.
Deficiency
81383
$50,324.63
81386
50,324.63
81389
25,162.12
The questions for decision are whether a transaction in which petitioners received certain shares of stock constituted an involuntary conversion within the meaning of section 1033, Internal Revenue Code of 1954, and, if it did not, what was the proper amount of taxable gain realized by petitioners. Findings of Fact Some of the facts are stipulated, are so found, and the stipulation and the pertinent exhibits are incorporated *284 herein by this reference. Petitioners Robert K. Hitke and La Verne E. Hitke are husband and wife; petitioners Robert L. Dahme and Dolores K. Dahme are husband and wife; and petitioners Kurt Hitke and Anna Hitke are husband and wife. Petitioners' business address is Chicago, Illinois, and they filed joint income tax returns for the calendar year 1955 on a cash basis with the director of internal revenue at Chicago, Illinois. Kurt and Anna Hitke are the parents of Robert K. Hitke and Dolores K. Dahme. At all times material, petitioners and other members of their family owned all the stock of Kurt Hitke & Company, Inc. (hereinafter called "K-H"), a general insurance agency, which had since 1932 specialized in taxicab, liquor liability and other hard-to-place lines of insurance and substandard risks. In 1947, K-H joined with another firm, Bergman & Lefkow (hereinafter called "B & L"), in organizing the Exchange Management Company (hereinafter called "Management"). Shortly thereafter Exchange Insurance Association (hereinafter called "Association") a reciprocal insurance company, was formed. Management acted as attorney-in-fact for Association. The stock of Management was owned *285 as follows: B & L and related interests
50%
K-H and related interests
45%
William Shapiro
5% William Shapiro was the general manager of K-H. In or about 1948 a voting trust agreement was created, whereby Kurt Hitke and Samuel Bergman were constituted co-equal trustees with the power to vote all the stock of Management. In December of 1953 Management, as agent for Association, organized a new corporation, the Exchange Insurance Company (hereinafter called "E-I"). E-I was a stock casualty company formed with $200,000 capital and $100,000 paid-in surplus. In March of 1954 all stock of E-I was transferred at cost to Association to complete the transaction. E-I had been formed to provide additional markets for the insurance business being produced by K-H and B & L, and eventually to take over the business then being conducted by Association. In March of 1955 William Shapiro transferred his "allegiance" to the interests represented by B & L, thus giving B & L 55 per cent control of Management. Thereafter, on April 13, 1955, Samuel Bergman sent telegrams to the Hitke group and the officers of E-I calling meetings of the Boards of Directors of Management and E-I *286 for various purposes, among which were proposals to cancel contracts with K-H and the Hitkes and to remove the Hitkes and Dahmes as officers. Petitioners commenced litigation in the Circuit Court of Cook County to block the proposals set out in the telegrams and secured a temporary injunction for that purpose. As the result of negotiations, a settlement was effected, whereby, inter alia, petitioners were divested of their stock in Management and received all the stock of E-I, as follows: Management Shares
E-I Shares
Surrendered
Received
Kurt and Anna Hitke
100
6,000
Robert K. and La Verne E. Hitke
200
12,000
Robert L. and Dolores K. Dahme
200
12,000
It is stipulated that petitioners' basis in the Management shares was as follows: Kurt and Anna Hitke
$1,000
Robert K. and La Verne E. Hitke
2,000
Robert L. and Dolores K. Dahme
2,000
Prior to the foregoing transaction, Management had taken over for cash at book value all the shares of E-I from Association. The value at which such shares had been carried on Association's books was $508,246.30; the surplus of E-I as of March 31, 1955. E-I as a going business constituted a market *287 or outlet for the placing of substandard and other hard-to-place insurance policies. As such, it had a substantial value to petitioners as a market for the K-H business above and beyond the value of its stock as an investment for others. The primary purposes of petitioners in exchanging their Management stock for E-I stock was to settle the dispute with B & L and to gain control of a market for the placing of the insurance business produced by K-H which market had theretofore been shared with B & L. In their respective joint income tax returns for 1955, petitioners claimed that the transactions whereby they received stock in E-I in exchange for stock in Management constituted an involuntary conversion within the meaning of section 1033 of the Internal Revenue Code of 1954. In the deficiency notices herein, the Commissioner determined that, as a result of the foregoing transactions, petitioners realized long-term capital gains, and that the transactions did not qualify as nontaxable exchanges under the provisions of section 1033 or any other section of the Internal Revenue Code of 1954. The Commissioner computed the gains as follows: Robert K. and La Verne E. Hitke
Value of E-I stock received
$203,298.52
Basis in Management shares
2,000.00
Gain realized
$201,298.52
Robert L. and Dolores K. Dahme
Value of E-I stock received
$203,298.52
Basis in Management shares
2,000.00
Gain realized
$201,298.52
Kurt and Anna Hitke
Value of E-I stock received
$101,649.26
Basis in Management shares
1,000.00
Gain realized
$100,649.26
*288 Opinion Section 1033, I.R.C. 1954, which is here involved, and which for present purposes, parallels section 112(f), I.R.C. 1939, provides that "[if] property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted" into property similar or related in service or use to the property so converted, no gain shall be recognized. The petitioners contend that the facts of this case bring the transactions involved herein within the meaning of the above section. In summary their argument is as follows: Before the settlement both the Association and E-I were writing sub-standard business of the same type and the petitioners had a minority interest in and use of both markets. The evidence of record proves that the settlement induced by the threat of receivership at the instance of the State, at a time when the markets were in the process of being seized by Samuel Bergman, converted the minority interest in and use of the two markets into the entire interest and use of one of the two markets. This one market was unquestionably similar and related *289 in service and use to the two markets before the conversion. In support of their position Gidwitz v. Lanzit Corrugated Box Co., 20 Ill. (2d) 208; 170 N.E. 2d 131, is cited as being authority for the proposition that the actions of Shapiro and Bergman amounted to a "seizure" of the Hitkes' property. That case dealt with a corporate dissolution under an Illinois statute which confers power on courts of equity to liquidate a corporation in an action by a shareholder where it is made to appear that the acts of directors or those in control of a corporation are illegal, fraudulent or oppressive. The Court was concerned only with whether the acts complained of were "oppressive". It was not at all concerned with the meaning of the "seizure" as used in the federal tax statutes and the case can have no application here. Further, we think the facts of this case fall far short of establishing that any property of the petitioners was the subject of "destruction", "theft", "seizure" or "requisition or condemnation, or the threat or imminence" of requisition or condemnation as required by the staute before an involuntary conversion can be said to have taken place. *290 The Davis Company, 6 B.T.A. 281, 283. Petitioners make much on brief of Bergman's testimony that he sent the telegrams described in our findings of fact with the purpose "to take" the market for the placing of insurance such as that which Association was writing. This, petitioners would have us hold, constituted a "seizure" or "imminence of seizure." But Bergman's say so did not seize anything. Neither do the terms "threat or imminence" as used in section 1033 apply to anything other than "requisition or condemnation." Dear Publication & Radio, Inc., 31 T.C. 1168, affd. 274 F. 2d 656 (C.A. 3). And there was no threatened requisition or condemnation here, despite petitioners' continual reference to a threat of receivership on the part of the State of Illinois. There is simply nothing in the record to show that any official of the State took part in or had any interest in the transactions between Bergman and the Hitkes. As we see it, the transaction in question was the result of a business maneuver by the Bergman interests which threatened to put the Hitkes at a competitive disadvantage. It resulted in the Hitkes divesting themselves of their *291 Management shares in exchange for E-I shares and a consequent division of the markets in which both Bergman and the Hitkes had interests. In our opinion this certainly does not add up to a statutory "involuntary conversion" of property. This conclusion is amply sustained by Dear Publication & Radio, Inc., supra, and we see no need to extend our discussion of the point. The question remaining is the propriety of the Commissioner's determination of the amount of gain from the exchange. This the Commissioner computed by ascribing a value of $508,246.30 to the property which the Hitke interests received in the transaction. The Commissioner's determination carries with it a presumption of correctness and the petitioners have the burden of proving it to be in error. The $508,246.30 figure ascribed by the Commissioner to the property received by petitioners is the figure at which the E-I shares had been carried on Association's books and which represents the cash figure at which Management had taken over the stock not long before the shares were transferred to petitioners. In our opinion, the transactions before us, in view of the apparently hostile feelings between the Bergman *292 and the Hitke interests, were clearly at arm's length and it is inconceivable, despite testimony by both Bergman and Hitke that the valuation of the shares did not enter into the negotiations, that this figure had no significance and that the Commissioner's use of it was arbitrary and capricious. We have carefully considered the testimony of the witnesses called by the petitioners with reference to the valuation of E-I stock, but we are unable to find a value any lower than the figure determined by the Commissioner. It is clear from the record that the property acquired by the Hitke interests had a value to them over and above what the E-I shares would have brought from other possible investors. They acquired full control of a market for their insurance by the transaction and the theoretical opinion of some other insurance investor as to the fair market value of the shares without giving any consideration to this factor carries little weight. Neither can we ascribe much weight to the after discovered possibility that the loss reserves which had been set up by E-I at the time of the transfer were too low. Taking the record as a whole we approve the figure determined by the Commissioner, *293 based, as it was upon a cash transaction among the interested parties and the figure reflecting that transaction on Association's books. Decisions will be entered for the respondent. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Robert L. Dahme and Dolores K. Dahme, Docket No. 81386; Kurt Hitke and Anna Hitke, Docket No. 81389.↩