**CREATIVE SOLUTIONS, INC. (formerly Alprodco, Inc.), Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 19959.**

United States Court of Appeals Fifth Circuit.

July 18, 1963.

Donald L. Wilson, A. E. Brooks, Kenneth G. Tarlton, Arch B. Gilbert, Brooks, Tarlton, Wilson & Gilbert, Fort Worth, Tex., for appellant.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Crombie J. D. Garrett, Harry Marselli, Attys., Dept of Justice, Washington, D. C., H. Barefoot Sanders, Jr., U. S. Atty., for appellee.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

This appeal involves income taxes for the fiscal years ending June 30, 1954 and June 30, 1955. The sole question is whether property sold as a result of the threat or imminence of condemnation must be sold to the condemning authority in order to have the benefit of the non-recognition of gain provisions of Sec. 1033 I.R.C.1954, 26 U.S.C.A. § 1033.

Gain from the sale of property is of course, taxable unless the transaction falls within some exception. 26 U.S.C.A. § 1002. Section 1033 provides an exception for compulsory or involuntary conversions of property where the converted property is promptly replaced by like property. The compulsory or involuntary conversion must be "as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof."

The district court, upon full findings of fact which are not questioned, found that the sale by the taxpayer of its property at Wolters Air Force Base near Mineral Wells, Texas, to Tex-Boro Cabinet Corporation was as a result of the threats of condemnation described in the findings, and that there was compliance with other requisites of Section 1033 for nonrecognition of gain. However, the district court concluded:

> "While plaintiff sold the land in question under threat of condemnation, and with the good faith belief, reasonably grounded, that such land would be condemned, there was no involuntary conversion under Section 1033 of the Internal Revenue Code of 1954, and plaintiff is not entitled to the benefits of the non-recognition of gains provision of that section, because of the fact that such land was sold to a private third party rather than the condemning authority."

On the question of whether the property sold as a result of threat or imminence of condemnation must be sold to the threatening authority, the statute and regulations are silent. The tax-

payer derives some comfort from the decisions and the revenue rulings, but we find these no more than persuasive. The case relied on by the taxpayer as a "square" holding in its favor, Masser v. Commissioner, 30 T.C. 741 (1958), is, we think, distinguishable on its facts, accurately stated in the Government's brief as follows:

> "In Masser the taxpayer owned a freight terminal and eight vacant lots directly across the street which were used for storing his semi-trailers when not in use. Because of the shortage of loading docks at the freight terminal, it was necessary to move the semi-trailers frequently between the parking lots and the freight terminal in order to transfer the contents to delivery trucks. The availability of parking space adjacent to the freight terminal was a substantial determinant of profit in the business. The parking lots were sold to the city under threat of condemnation, and the taxpayer, being unable to secure adequate replacement lots, sold the terminal to a laundry. The proceeds of the sale, together with the compensation paid by the city, were expended for a similar terminal and parking facilities suitable for taxpayer's business operation. The Tax Court permitted involuntary conversion treatment of the proceeds of sale of the terminal, as well as the proceeds from the sale of threatened lots. It cited the inadequacy of the available lots for use in the taxpayer's business; noted (746) that the properties were 'practically adjacent to each other;' and found that they 'were acquired for the purpose of being used and were used * * * as an economic unit.'"

Taxpayer's able counsel further point out that:

> "In a number of other cases where sales were made to private interests, decisions against the taxpayers were put on other grounds, after very careful consideration. If the fact that the sales had been made to private interests had been considered determinative, the cases could have been summarily decided on that basis. See: The Davis Co., 6 B.T.A. 281, 284 (1927); Piedmont-Mt. Airy Guano Co., 8 B.T.A. 72, 74 (1927); George S. Robins, 15 B.T.A. 1068, 1072 (1929); Nehi Beverage Company, 16 T.C. 1114, 1119 (1959); Dear Publication & Radio, Inc., 31 T.C. 1168–1174 (1959); and Robert W. Hitke, 20 T.C.M. 332, 335 (1960)."

To that argument, the Government responds:

> "The thrust of the contention seems to be that since the courts could have decided the cases on the ground that the properties were sold to non-condemning parties, but instead based their decisions on the grounds that there was no threat of condemnation, the courts implicitly held that a sale to a noncondemning party qualifies under the statute. * * * Such reasoning, if followed, would require courts to negate every possible issue that might possibly be determinative of litigation."

The revenue rulings relied on by the taxpayer[1] are likewise inconclusive.

The parties have found only one text which considers the question, Fouts, *Gain Upon Involuntary Conversions*, New York University Nineteenth Annual Institute on Federal Taxation, 993, 995 (1961), where the author states, without supporting authority, "It is immaterial whether the sale is to the prospective condemner or to a third party."

The taxpayer insists that:

> "An analysis of the legislative history of Section 1033 of the Internal Revenue Code of 1954 shows that Congress never intended that property sold as a result of the threat of condemnation must be sold to the threatening authority. See, Seid-

---

[1]. Rev.Rul. 58–557, 1958–2 Cum.Bull. 402; Rev.Rul. 59–361, 1959–2 Cum.Bull. 183.

man's Legislative History of Federal Income and Excess Profits Tax Laws, 1953–1939, Vol. 1, pp. 1579–1586; and Seidman's Legislative History of Federal Income Tax Laws, 1938–1861, pp. 691, 839."

The Government argues to the contrary, and its brief traces elaborately and in detail the legislative history of the section. The net result seems to us to be that the legislative history is silent on the question. The basic statute has never contained a requirement that property sold as a result of the threat of condemnation be sold to a threatening authority. Seidman's Legislative History of Federal Income and Excess Profits Tax Laws, 1953–1939, Vol. 1, pp. 1579–1586; and Seidman's Legislative History of Federal Income Tax Laws, 1938–1861, pp. 691, 839.

In Section 1033 and the statutes which preceded it, Congress set forth with meticulous detail the requirements for nonrecognition of gain. It did not require that the sale must be to the threatening authority. The Tax Court has recognized that the provisions of the section constitute "a relief measure designed to prevent inequitable incidence of taxation, and therefore to be construed liberally to effectuate its purpose." Gaynor News Co., Inc. v. Commissioner, 22 T.C. 1172, 1177 (1954).

The district court found that in the condemnation of other properties at Wolters Air Force Base, "the owners of the properties were given a maximum of sixty days to remove themselves and their properties from the land condemned." The district court further found that:

"The plaintiff had production contracts which required that certain items be produced and delivered on a specific date or else the plaintiff would incur penalties under the contracts. The plaintiff also had Government defense contracts requiring specific completion dates. The officers of the plaintiff were also aware that the 'down time' (the time it would take to disband the plant,

move it, and again commence production) would cause very serious financial losses to the plaintiff. It was the business judgment of the officers of the plaintiff that it would take approximately one year to design and construct a replacement plant and to move the operation into the replacement facilities with the minimum loss of production."

We conclude that the taxpayer's sale of its properties to a private third party come within the letter and purpose of Section 1033, and that the taxpayer is entitled to the benefit of the nonrecognition of gain provisions of that section. The judgment is therefore reversed and the cause remanded for further proceedings.

Reversed and remanded.