MARION L. RENTZ and HARRY RENTZ, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rentz v. Commissioner
Docket No. 4112-74.
United States Tax Court
T.C. Memo 1977-13; 1977 Tax Ct. Memo LEXIS 426; 36 T.C.M. (CCH) 68; T.C.M. (RIA) 770013; January 24, 1977, Filed Donald W. Booker, for the petitioners. Paul J. Sude, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax for 1965, 1966, 1967, and 1968: Year
Deficiency
1965
$32,637.66
1966
25,953.78
1967
15,353.11
1968
2,026.71
The deficiency for 1965 involves the individual income tax of petitioner Marion L. Rentz, and the deficiencies for 1966, 1967, and 1968 involve the joint income tax of both petitioners. One issue having been settled, the issues for decision are as follows: 1. Whether, and to what extent, petitioner Marion L. Rentz realized gain in 1965, 1966, 1967, or 1968, *428 from the condemnation of 45.78 acres of improved land used as her principal residence. The answer depends upon whether she constructively received sums of money deposited in the registry of the court prior to the actual disbursement of such sums and, if so, when such constructive receipt occurred. 2. Whether, and to what extent, petitioners qualify for the nonrecognition of the gain realized on the condemnation of petitioner Marion L. Rentz' property. The answer depends upon whether, and to what extent, she timely reinvested the condemnation proceeds in"property similar or related in service or use" under section 1033[1]/ or made a timely election under section 1034 to reinvest such proceeds in a new principal residence. Respondent's deficiency determinations for 1965, 1966, and 1967 are alternative since issue 1 primarily involves a determination of the year or years in which the condemnation proceeds are taxable, and the answer to that question affects the resolution of the timeliness issues under sections 1033 and 1034. *429 FINDINGS OF FACT At the time their petition was filed, petitioners Marion L. Rentz and Harry Rentz, wife and husband, were legal residents of Wilmington, Delaware. Marion L. Rentz (hereinafter petitioner) filed an individual Federal income tax return for 1965 in the name of Marion L. Dougherty. She subsequently married Harry Rentz, and they filed joint Federal income tax returns for 1966, 1967, and 1968. Prior to August 8, 1965, petitioner and her brother, Ernest Lodge Vail, owned, as tenants in common, a 60-acre parcel of real property situated in New Castle County, Delaware. Petitioner occupied as her principal residence a 2-story frame dwelling located on the 60-acre parcel. The dwelling, a large stone structure with 17 rooms, was built by petitioner's grandfather in 1848 or 1850. Also located on the 60-acre tract were a small bungalow, a large lawn, gardens, football and baseball fields, a barn, and some woods. Petitioner had lived on this property all except 5 years of her life. Petitioner acquired her interest in this property by inheritance in 1935. Her basis in the 60-acre parcel (one-half of the total basis) was $8,500. The parties agree that petitioner's basis *430 in the 45.78 acres later condemned by the State of Delaware is $6,519.50. During 1964, the Delaware State Highway Department (SHD) commenced negotiations with petitioner and her brother for the acquisition of 45.78 acres of the 60-acre parcel. SHD wanted a strip comprising 14.69 acres running through the middle of the 60-acre tract for use as part of a new limited-access dual highway known as Interstate Route I-95. At the same time, SHD negotiated for the purchase of the 31.09 acres which lay immediately to the north of the 14.69-acre strip and which would be landlocked after the 14.69-acre strip was taken. Petitioner's residence straddled the boundary line between the 14.69-acre tract and the 31.09-acre tract. Prior to August 9, 1965, SHD offered petitioner and her brother $274,140 for the 45.78 acres which it wanted to acquire. The offered amount would have included payment for the residence. The offer was rejected. On August 9, 1965, the State of Delaware, through SHD, commenced an action in the Superior Court of New Castle County, Delaware (hereinafter the Superior Court), 1965 cause no. 3128, for the condemnation of the 45.78-acre parcel. On August 10, 1965, the State *431 deposited with the clerk of that court the sum of $274,140 which SHD estimated to be just compensation for the entire acreage to be taken. The amount was not allocated between the 14.69-acre and the 31.09-acre tracts. Petitioner and her brother promptly filed an objection to the taking of their land. Because of the joint ownership of the property by petitioner and her brother, each was entitled to one-half of the ultimate condemnation award. On September 17, 1965, the Superior Court entered an order awarding the State right of possession of the 14.69-acre tract on which the highway right-of-way was to be located. This order was subject, however, to the right of petitioner and her brother to live in the house on the property until March 1, 1966, and their continued right to use the condemned lands as access to other lands they owned. It was SHD's policy to object to the withdrawal of any funds deposited with a court as long as the owner was in physical possession of a dwelling or other structure located on the condemned property. Further, petitioner and her brother could not be required to vacate the land on March 1, 1966, unless they received 30 days' notice. The Superior *432 Court awarded petitioner a summary judgment denying the State the right to take the 31.09-acre parcel. The State appealed to the Delaware Supreme Court the portion of the judgment entered against it, and on February 1, 1967, that court reversed the judgment, remanding the case to the trial court for testimony and findings on the issue of necessity for the condemnation. State, State Hwy. Department v. 14.69 Acresof Land,226 A.2d 828 (Del. 1967). The court's mandate went down February 20, 1967. Petitioner later withdrew her objection to the taking of the 31.09-acre parcel, and on April 14, 1967, the Superior Court entered an order awarding possession of the 31.09-acre parcel to SHD. In the meantime, on July 1, 1966, petitioner petitioned the Superior Court for withdrawal of $44,070 of the August 10, 1965, deposit made by SHD with the court, and on the same date the Superior Court entered an order permitting her to withdraw that amount. The petition requesting the withdrawal recites that: "The sum of * * * $88,140 * * * represented the amount deposited for the 14.69 acres possession of which was granted the * * * [State] by this Court." SHD's representative *433 handling the case estimated that $88,140 was the value of the 14.69 acres. The order authorizing the withdrawal contains the following paragraph: 4. That the Court reserve the right pursuant to Section 6110, Title 10, Delaware Code to enter a judgment against said defendant [i.e., petitioner herein] in favor of the plaintiff [the State] for any overpayment in the event the said sum of Forty-Four Thousand and Seventy ($44,070.00) Dollars shall exceed the compensation finally awarded to the defendant in the above cause. On April 14, 1967, after the Superior Court had awarded right of possession of the 31.09 acres to the State, the Superior Court granted petitioner permission to withdraw the $93,000 balance of her share of the August 10, 1965, deposit, and that amount was withdrawn. Petitioner appealed the judgment fixing the amount of the condemnation award, and on December 20, 1967, the Condemnation Commission determined the final award of just compensation to be $369,122, petitioner's one-half share being $184,561. The award was apportioned as follows: 14.69 acres
$266,525
31.09 acres
102,597
Total
$369,122
On January 8, 1968, SHD deposited an *434 additional $94,982 (the difference between the final award of $369,122 and the initial deposit of $274,140) with the Superior Court. On January 22, 1968, petitioner withdrew $47,491, her share of the additional deposit. During 1968 petitioner also received interest in the amount of $4,577.95 on the condemnation award. In their 1968 return, petitioners reported interest in the amount of $2,440.86 received from the condemnation award. On May 3, 1967, petitioner purchased real property situated at 1314 Philadelphia Pike for $50,707.46. The real property so acquired consists of approximately 3.038 acres, divided into three lots--Lot 137 (.838 acres), Lot 63(a) (1.214 acres), and Lot 63(b) (.986 acres). When petitioner acquired Lot 63(a), three improvements which were then used and have since been used to produce rental income, were located thereon. Lots 63(b) and 137 were unimproved at that time. In August 1967, petitioners contracted for the construction of a new home on Lot 63(b). The home was completed in July 1968 at a total cost of $71,741.82. However, the new house was occupied by petitioners on April 1, 1968, as their principal place of residence. The cost of Lot 63(b) *435 on which the new home was constructed, acquired as part of the May 3, 1967 purchase, was $12,500. OPINION The first issue to be decided is with respect to the year in which the condemnation proceeds are taxable to petitioner. Respondent takes the position that the full amount of the August 10, 1965, deposit (petitioner's share being $137,070) was constructively received by petitioner in 1965 and, therefore, was taxable to her in that year. Respondent contends the additional award (petitioner's share being $47,491), deposited with the court on January 8, 1968, was taxable when it was received in 1968. Petitioner takes the position that title to the condemnation proceeds did not vest in her until she received the final award in 1968 and, therefore, such proceeds were not taxable to her until that time. We do not fully agree with either party. We find no merit in respondent's argument that petitioner's share ($137,070) of the August 10, 1965, deposit was constructively received on September 17, 1965, the date the Superior Court awarded right to the possession of the 14.69-acre tract to the State. *436 The doctrine of constructive receipt is succinctly stated as follows in section 1.451-2(a), Income Tax Regs.: Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. We do not think any part of the sum deposited with the Superior Court was constructively received by petitioner prior to the year in which she actually received the money. Under Delaware law, the plaintiff (the State) in a condemnation proceeding may file a notice of intention to take possession of the property sought to be condemned and deposit with the court a sum of money estimated to be just compensation for the property. Thereafter, "upon entry *437 of an appropriate order by the Court," the plaintiff (the State) has the right to enter into possession. Del. Code Ann. tit. 10, sec. 6110(a) (1953). Upon application of an interested party, "the Court may order the money so deposited in Court, or any part thereof, be paid forthwith for or on account of just compensation to be awarded in the proceeding." Del. Code Ann. tit. 10, sec. 6110(b) (1953). Litigation may continue to a final award, and title vests in the plaintiff (the State) on the date of the payment of the final award. Del. Code Ann. tit. 10, sec. 6110(c) (1953). Petitioner's share of the $274,140 deposited in the Superior Court by the State on August 10, 1965, was not "credited" to her account, "set apart" for her, or "otherwise made available" so that she could "draw upon it at any time" within the meaning of section 1.451-2(a), Income Tax Regs. To the contrary, the deposit was subject to "substantial limitations or restrictions" within the meaning of that regulation. The deposit was a lump sum covering both the 14.69-acre and the 31.09-acre tracts without any allocation of the deposit between the two tracts, and its disposition was subject *438 to the order of the Superior Court. That court's order of September 27, 1965, granted petitioner's motion for summary judgment, holding the State could not lawfully condemn and take the 31.09-acre tract. Thus, withdrawal of the deposit would have required petitioner to show what portion of the deposit was properly allocable to the 14.69 acres which the Superior Court held was subject to condemnation, and any such allocation was complicated by the dwelling's location on the boundary line between the two tracts. Moreover, the Superior Court order permitted petitioner to occupy the dwelling house until March 1, 1966, and reserved to her until that date the right to use the condemned acreage for access to the land which she retained. It was the policy of SHD, while the owner was in physical possession of a dwelling or other structure on a property which had been condemned, to object to withdrawal of funds deposited in court. Thus, to obtain any portion of the funds from the Superior Court in 1965, petitioner would have been required not only to establish to the satisfaction of the Superior Court the portion allocable to the condemned acreage but also to convince the court to reject *439 SHD's objections to withdrawal of any substantial portion of the deposit. In these circumstances, the necessity for obtaining a court order permitting withdrawal of the funds was a substantial limitation or restriction within the meaning of the above-quoted regulation. Petitioner and her brother might have obtained the funds by relinquishing possession of the residence and acceding to the State's demand for the condemnation of the 31.09 acres, but their capability of obtaining the funds by foregoing such rights does not mean the funds were constructively received. We do not think any portion of the deposited funds was constructively received in 1965. Respondent relies upon State, State Highway Dept. v. 14.69 Acres of Land,245 A.2d 788, 790 (Del. 1968), in which the Delaware Supreme Court held that petitioner was not entitled interest on $214,000 of the deposit. But that court did not apply constructive receipt standards in reaching its decision. The court reasoned that the "problem" was one of arriving at a "fair result," one being to avoid penalizing the State during the period petitioner contested the State's right to take and the other to avoid penalizing *440 petitioner's good faith contest. State, State Highway Dept. v. 14.69 Acres of Land, supra at 790. Interest was denied on $214,000 of the deposit on the ground that "in all probability" petitioner and her brother could have withdrawn that amount and "[they] should at least have made application to that end. State, State Highway Dept. v. 14.69 Acres of Land,supra at 791. One premise of the Delaware Supreme Court's decision was that the $88,140 withdrawn in 1966 "appears" to be an amount "arrived at by the owners, themselves, on the basis of a value of $6,000 per acre for the 14.69 acres." State,State Highway Dept. v. 14.69 Acres of Land,supra at 789. This conclusion was based on "testimony of the Department's appraisers" at a "subsequent trial" that "the Department allocated not less than $214,000 as damages for the taking of the 14.69 acres." State, State Highway Dept. v. 14.69 Acres of Land,supra at 790. The trial court had "assumed that there was a reasonable relationship between $88,140.00 and just compensation for the 14.69 acres," but the Delaware Supreme Court found there was "no support *441 in the record for this assumption." State, State Highway Dept. v. 14.69 Acres of Land,supra at 791. In the instant case, the evidence shows that the $88,140 ($6,000 per acre) withdrawn by petitioner and her brother in July 1966 was the amount SHD's attorney estimated to be the value of the 14.69 acres. [2] Petitioner and her brother accepted that estimate. There is nothing in the record to indicate that petitioner knew SHD's appraisers had fixed a higher value for the 14.69-acre tract or had any reason to believe that she could have withdrawn a larger amount at that time without relinquishing possession of the dwelling located on the property. [3]The test of constructive receipt enunciated in section 1.451-2(a), Income Tax Regs., is not whether petitioner and her brother ultimately might have prevailed in litigation for the release of a larger portion of the deposit but whether they could "draw upon it at any time" or, stated another way, whether their control of the fund was subject to substantial limitations or restrictions. *442 We think it was. *443 Apart from the nonrecognition of gain provisions of sections 1033 and 1034, discussed below, petitioner realized taxable income as she received funds from the Superior Court deposit. Petitioner realized gain in July 1966, when she received $44,070, in April 1967, when she received $93,000, and in January 1968, when she received the balance of $47,491. She received these sums without any substantial restrictions on their disposition or use. Under the claim-of-right doctrine enunciated in North American Oil v. Burnet,286 U.S. 417, 424 (1932), confirmed and followed in United States v. Lewis,340 U.S. 590 (1951), and under the principle of annual accounting periods, Burnet v. Sanford & Brooks Co.,282 U.S. 359 (1931), such sums were taxable income in the years when they were received. Had the court handling the condemnation proceeding ultimately fixed a value for the property less than either of the first two payments, or the sum of the two payments, petitioner might have been required to refund portions of the payments, but that contingency *444 does not prevent the realization of gain in the year of receipt. Feinberg v. Commissioner,377 F.2d 21, 26 (8th Cir. 1967), affg. 45 T.C. 635, 641 (1966); R. A. Stewart & Co.,57 T.C. 122, 126-127 (1971); Estate of Jacob Resler,17 T.C. 1085, 1092 (1952). [4]
There remains the issue as to what amount, if any, of the gain realized on the condemnation of the 45.78 acres petitioner is entitled to defer under section 1033 or 1034. Petitioner did not report the condemnation proceeds in her 1965, 1966, or 1967, returns but reported the entire transaction in her 1968 return. In that return, she reported the income derived from the entire transaction but claimed $50,594.50 for the realty purchased on May 3, 1967, and $71,741.82 for the home constructed on such realty should be deferred. To support this treatment, petitioner relies upon section 1034 and, alternatively, section 1033.
We reluctantly conclude that section 1034, first raised by petitioners in an amendment to their petition filed at the time *445 of the trial, is not applicable. The general rule is that an involuntary conversion of property, if occurring after December 31, 1953, "shall not be treated as the sale of such property." Sec. 1034(i)(1)(B). The tax results of the conversion are governed by section 1033. Sec. 1.1034-1(h), Income Tax Regs. The condemnation of a taxpayer's principal residence occurring after December 31, 1957, however, shall "at the election of the taxpayer" be treated as the sale of such property; such "election shall be made at such time and in such manner as the Secretary or his delegate shall prescribe by regulations." Sec. 1034(i)(2); [5]sec. 1.1033(b)-1, Income Tax Regs.
*446 The regulations state that the election under section 1034(i)(2) shall be made in a statement attached to the taxpayer's income tax return, when filed, "for the taxable year during which the disposition of his old residence occurs." In addition to indicating that the taxpayer elects to treat the disposition of the residence as a sale, the statement should show (a) the basis of the old residence, (b) the date of its disposition, (c) the adjusted sales price of the old residence, if known, and (d) the purchase price, date of purchase, and date of occupancy of the new residence if it has been acquired prior to the time of making the election. Sec. 1.1034-1(h)(2)(iii), Income Tax Regs., is in part as follows: The election under section 1034(i)(2) shall be made in a statement attached to the taxpayer's income tax return, when filed, for the taxable year during which the disposition of his old residence occurs. The statement shall indicate that the taxpayer elects under section 1034(i)(2) to treat the disposition of his old residence as a sale for purposes of section *447 1034 * * * [Emphasis added.] It is evident that petitioner made no timely section 1034 election. The disposition of petitioner's old residence occurred no later than 1967, the year in which the proceeds of the house and the 31.09-acre tract were received. No mention of the condemnation award or any gain reported therefrom was made in petitioner's income tax return for that year. A schedule attached to petitioner's 1968 income tax return includes various calculations relating to the recognizable gain from the condemnation award. That schedule, being the only document which could be considered as an election, however, is insufficient to constitute an election within the meaning of section 1034(i) and section 1.1034-1(h)(2)(iii), Income Tax Regs. Apart from being submitted for the wrong taxable year (1968 rather than 1967), nothing in that schedule indicates whether petitioner was relying on section 1033 or section 1034 in reporting her gain. The reason for having the election specifically indicate reliance on section 1034 is clear. Either section 1033 or *448 1034 may apply to an involuntary conversion of a taxpayer's residence, and the nonrecognition mechanics of both situations are similar in that gain is recognized only to the extent that the amount realized (sec. 1033) or adjusted sales price (sec. 1034) exceeds the cost of newly acquired property (sec. 1033) or of the new residence (sec. 1034). However, the replacement qualifications and time requirements for making replacements under sections 1033 and 1034 differ. Unless the Commissioner is apprised of the section relied upon by the taxpayer, confusion may arise on audit as to the qualification of the replacement property and the timeliness standards to be applied.
The schedule attached to petitioner's 1968 return and the computation contained therein could apply to either section 1033 or 1034 and a determination of which section was being relied upon would be conjectural. We, therefore, conclude that petitioners failed to properly elect to have the involuntary conversion treated under section 1034 and, accordingly, that section is unavailable to them. While petitioner is precluded from the use of section 1034, she still may rely on section 1033 in an attempt to defer recognition *449 of the realized gain from the condemnation of her property. Sec. 1.1033(b)-1, Income Tax Regs. From the record, it is clear that, as a result of involuntary conversions, petitioner's 60-acre estate, all of which was used for residential purposes, was converted into money and part of the money was reinvested in residential property. This is precisely the kind of situation contemplated by the relief provisions of section 1033. However, before petitioner can avail herself of the benefits of nonrecognition of gain under section 1033, she must establish that property "similar or related in service or use" was purchased within "one year after the close of the first taxable year in which any part of the gain upon the conversion is realized." Sec. 1033(a)(3)(B). Respondent argues that the lots purchased by petitioners in May 1967 were not in their entirety "property similar or related in service or use" within the meaning of section 1033(a)(3)(A). Of the total $50,707.46 purchase price of the lots, respondent contends that only $7,100 is allocable to residential *450 property which would qualify as replacement property. The remainder, respondent maintains, is allocable to investment property, i.e., Lot 63(a), on which the rented structures were located, and Lot 137, the vacant land. On this theory, respondent would have us hold that only the $7,100 may be deferred under section 1033, and the remainder is currently taxable. As we view the evidence, however, $12,500 of the $50,707.46 petitioner paid for the Philadelphia Pike property is allocable to the portion thereof used for the construction site of her new residence. Within the meaning of section 1033(a)(3), this portion was "similar or related in service or use" to the converted 14.69 acres of land used for residential purposes. Section 1033(a)(3)(B)(i) provides that condemned property must be replaced no later than "one year after the close of the first taxable year in which any part of the gain upon the conversion is realized." Since the order of September 17, 1965, condemning the 14.69-acre tract permitted petitioner "to remain in the dwelling house on said property until March 1, 1966," *451 and excepted from the rights granted the State of Delaware "any denial of access to other lands" owned by petitioner and since it was the policy of SHD to oppose withdrawal of funds deposited in a court registry as long as the prior owner remained on the land, we do not think the conversion of the 14.69-acre tract into money occurred in 1965. Rather, we think the conversion of that tract occurred in 1966, when petitioner relinquished possession of the 14.69 acres and received $44,070. This was the first part of the gain realized on the conversion. Cf. Feinberg v. Commissioner,377 F.2d 21, 26 (8th Cir. 1967), affg. 45 T.C. 635, 640 (1966); Wendell v. Commissioner,326 F.2d 600, 602 (2d Cir. 1964), affg. 39 T.C. 809 (1963). The Philadelphia Pike property was purchased on May 3, 1967, which was within one year after "the close of the first taxable year in which any part of the gain upon the conversion" was "realized." Accordingly, petitioner is entitled to defer the $12,500 allocable to the portion of the Philadelphia Pike property used for the construction site of her new residence. There remains the issue as to *452 the exclusion of the $71,741.82 paid for the construction of the replacement residence. In September 1965, the Superior Court granted petitioner's motion for summary judgment denying SHD's condemnation claim in respect of the 31.09-acre tract. Not until February 1967 did the Delaware Supreme Court remand the case for a trial on the issue of the necessity for the condemnation. In April 1967, when petitioner conceded the case and received the proceeds of SHD's deposit in the registry of the Superior Court, "part of the gain upon the conversion" of the 31.09-acre tract was realized within the meaning of section 1033(a)(3)(B). At the same time petitioner received the first proceeds of the residence located on the boundary line between the 14.69-acre and the 31.09-acre tracts. Petitioner promptly thereafter contracted for the construction of the new residence, and it was completed and occupied within less than "one year after the close of the first taxable year" (1967) in which realization of the gain on the conversion of that tract occurred. We conclude, therefore, that the $71,741.82 expended by petitioner for the construction of a new home qualifies under section 1033(a) as an expenditure *453 for qualifying replacement property. In reaching this conclusion, we do not purport to lay down any rules of general applicability. We limit our decision to the unique facts of this case. As we view those facts, there were two involuntary conversions and two replacements: (1) The condemnation of the 14.69 acres, for which the first part of the gain was realized in 1966, followed by the purchase of the lot on May 3, 1967, and (2) the taking of the 31.09 acres for which the first part of the gain was realized in 1967 followed by the construction of the home pursuant to a contract entered into in August 1967 and completed in July 1968. [6]
The two condemnations, each followed by a separate reinvestment, are complicated by the fact that petitioner's residence straddled the boundary line between the 14.69-acre tract and the 31.09-acre tract. As a practical *454 matter, the taking of the 14.69-acre tract alone would have required destruction of the house, and the final report by the Condemnation Commission indicates that $266,525 of the total award of the $369,122 was allocated to the 14.69-acre tract. However, the residence was no more a part of one tract than the other. Both tracts were used for residential purposes. Until petitioner received some award for the house, she had no funds with which to replace it, and, under the statute, the one-year replacement period did not start until part of the gain upon the conversion of the house was realized. That did not occur until 1967. Significantly, the SHD attorney in 1966 agreed to allow a distribution of only $6,000 per acre for the 14.69-acre tract with no amount for the house. Only the gain included in that amount had been realized when petitioner agreed to settle the lawsuit over the condemnation of the 31.09-acre tract. Prior to that time, petitioner realized nothing from the condemnation of her residence as such. Not until April 1967 did she receive anything for it. In such circumstances, we think the most reasonable solution to this coundrum is to hold that the one-year replacement *455 period for the residence as such began on December 31, 1967, "the close of the taxable year in which" the first "part of the gain upon the conversion" of the house was "realized." Sec. 1033(a)(3)(B)(i). In that taxable year, petitioner received the first part of her gain from both the 31.09-acre tract and the residence as such, and she constructed her replacement residence within the next following year. This solution conforms with the express language of the statute. Moreover, it avoids an inequity, and section 1033 is a "relief measure designed to prevent inequitable incidence of taxation, and to be construed liberally to effectuate its purpose." Gaynor News Co.,22 T.C. 1172, 1177 (1954); Creative Solutions, Inc.,320 F.2d 809, 811 (5th Cir. 1963). To reflect the foregoing, Decision will be entered under Rule 155.* Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.
2. Attacking the credibility of SHD's attorney with free abandon, respondent asks us to disbelieve the attorney's testimony that he told petitioner and her brother that they could withdraw only $88,140 in 1966, after they had relinquished possession of the dwelling. The attack is based on the ground that the attorney argued in the interest case cited above ( State, State Highway Dept. v. 14.69 Acres of Land,245 A.2d 788↩ (Del. 1968)) that interest was not allowable under Delaware State law on $214,000 of the original deposit on the theory petitioner and her brother might have been able to obtain that amount if they had petitioned the Superior Court. We find credible the testimony before this Court that the attorney in July 1966 agreed to permit petitioner and her brother to withdraw only $88,140 ($6,000 per acre). At that time, the attorney was handling the appeal with respect to the 31.09 acres, and any allocation of the deposited sum between the two tracts was complicated by the location of the residence on the boundary line. Respondent offers no explanation of why petitioner and her brother in 1966 would not have withdrawn all they thought they could have obtained at that time. 3. As discussed in the text which follows, this $6,000-per-acre withdrawal apparently included nothing for the residence located on the boundary line between the two tracts.↩
4. Petitioners concede that they are taxable on the full amount of the interest received in 1968.↩
5. SEC. 1034. SALE OR EXCHANGE OF RESIDENCE. (i) Special Rule for Involuntary Conver-sions.-- (2) Condemnations after December 31, 1957.--For purposes of this section, the seizure, requisition, or condemnation of property, or the sale or exchange of property under threat or imminence thereof, if occurring after December 31, 1957, shall, at the election of the taxpayer, be treated as the sale of such property. Such election shall be made at such time and in such manner as the Secretary or his delegate shall prescribe by regulations.↩
6. Rev. Rul. 67-254, 1967-2 C.B. 269, holds that the investment of part of the proceeds of an involuntary conversion in the construction of a building on property already owned by the taxpayer may qualify as the acquisition of property similar or related in service or use under sec. 1033(a)(3)(A)↩.